IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 7:11-CV-00134-HL |
| and | : : | |
| ZANDREA WADE, et al | : : | |
| Plaintiff/Intervenors | : : | |
| v. | : : | |
| HAMILTON GROWERS, INC., et al | : : : | |
| Defendants. | : : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF EEOC'S MOTION TO COMPEL DISCOVERY RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION TO DEFENDANTS HAMILTON GROWERS, INC. AND SOUTHERN VALLEY FRUIT AND VEGETABLE, INC.**

On March 1, 2012, Plaintiff EEOC served its First Request for Production of Documents and Electronically Stored Information to Defendant Hamilton Growers, Inc. and Defendant Southern Valley Fruit and Vegetable Inc. (Exhibit A). The parties agreed to an extension for answering and Defendants served their response of May 7, 2012. (Exhibit B). In response to Plaintiff's seven requests for production, Defendants Hamilton Growers, Inc. and Southern Valley Fruit and Vegetable, Inc. failed to produce a single document in response to the requests. Defendants' refusal to provide documents was predicated on unsubstantiated boilerplate objections of vagueness, ambiguity, over breadth, relevance, and burden. Moreover, Defendants

alleged that there were no documents responsive to requests nos. 4 and 5.  On May 21, 2012, Plaintiff EEOC sent a good faith letter addressing the inadequacy of the stated objections and the lack of document and electronic production. (Exhibit C).   Accordingly, later on May 21, 2012, Defendants produced four hundred and thirty seven (437) pages of documents which purport to be the personnel documents for the named Plaintiff-Intervenors only.  The documents produced, however, represent a partial response to the EEOC's Request for Production No. 6 only, and by no means constitutes a full and adequate response to information sought by the request.

Defendants' continued refusal to provide any documents and/or electronic information responsive to Plaintiff's requests numbers 2-4, and 7, and their partial response to request number 6, delays resolution of this lawsuit and prejudices Plaintiff's ability to develop its case.

## ARGUMENT

**I.      Defendants' General Objections are Meritless and Should be Waived.**

Defendants' response to Plaintiff's First Request for Production is prefaced with six general objections.  Each general objection is framed by the phrase "to the extent" that they apply.  General objections made in this manner are considered meritless on their face. See Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982) ("the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection") (internal quotations omitted); Prof Fit Mgmt. v. Lady of Am. Franchise Corp., 2011 U.S. Dist. LEXIS 19152 at *4 (D.Kan. February 25, 2011) ("Defendant's general objections made 'to the extent' that they may apply to a particular request are considered . . . meritless on their face.").  These objections are broad and do not explain whether or to what extent information is being withheld.  See Prof Fit Mgmt, 2011 U.S. Dist. LEXIS at *6 ("where the objecting party makes no attempt to apply the theoretical general objection, the

Court will deem those general objections waived and will decline to consider them objections at all."). Although Defendants provided responses to the individual requests for production, it improperly failed to explain the applicability of the general objections to each of the specific requests. See Id. at *8 ("Defendant simply made both general and specific objections. As such, Plaintiff and the Court [were] still left wondering exactly how each general objection [applied] to a specific document request."). Therefore, the Defendants' general objections are meritless and should be waived.

Defendants also assert particularized, yet identical objections to each of requests numbers. 2, 3, 6, and 7 claiming that each is "vague and ambiguous," "overly broad and unduly burdensome" and "to the extent it seeks information, including confidential information, irrelevant to the parties' claims or defenses." (Exhibit B at pp. 5, 7-8). As shown below, each request is understandable, narrowly tailored, and seeks information that is relevant to the claims or defenses in this case, and the information sought is readily assessable to Defendants. Moreover, Defendants fail to indicate what information, if any, they deem as "confidential." There is no absolute privilege for "confidential information" and Defendants' blanket assertion of "confidentiality" affords no grounds for withholding production. See Hope for Families & Comm. Service, Inc. v. Warren, 2009 WL 1066524, * 2 (M.D. Ala. April 29, 2009) (quoting Fed. Open Mkt. Comm. Of Fed. Reserve Sys. V. Merrill, 443 U.S. 340, 362 (1979)).

Finally, in addition to the aforementioned objections, Defendants assert that Request No. 7 seeks "information protected by the attorney-client privilege and/or attorney work product doctrine, or was otherwise prepared in anticipation of litigation." (Exhibit B at p. 10). Again, Defendants provide no basis for any privilege assertion and failed to provide a privilege log, as required. See Hall v. Gov't Empls. Ins. Co., 2008 U.S. Dist. LEXIS 44664, at *4-5 (M.D. Ga.

3

June 6, 2008) ("a party resisting discovery on the basis of the attorney-client privilege or work product doctrine must state the factual basis for its assertions."). Therefore, Defendants' privilege objection is unfounded and improper and should be waived.

II.     **Plaintiff EEOC's Production Requests Seek Relevant and Discoverable Documents and Electronically Stored Information.**

    A.     **Requests for Production # 2-3: Defendants should be required to produce information pertaining to the particular records, codes, language, abbreviations and sample reports included in Defendants' databases.**

Requests numbers 2 and 3 seek documents related to the "Famous Software" and "Datatrack" systems used by Defendants to record and store personnel information for Defendants' employees. (See Exhibit A at pp. 7-10). Specifically, Plaintiff requests manuals, guidebooks, or instructions that describe these database and the records or fields the databases contain. In addition, Plaintiff requests documents that identify or describe the record layout, data dictionaries and other documents that explain coded or abbreviated entries for any personnel information contained in the "Famous" and Datatrack" databases. Lastly, Plaintiff requests copies of the first ten pages of data from any reports regularly generated or printed from these databases in order to gauge what information is maintained and how the information is utilized in a practical manner. To date, Defendants have failed to produce a single document that is responsive to these requests.

These straightforward, unambiguous requests are intended to guide and inform Plaintiff's future requests for data production and allow for eventual data analysis. Defendants object to these requests on the basis that they are "vague and ambiguous, overly broad and unduly burdensome." (See Exhibit B at pp. 5 and 7). Defendants further assert "that they have limited knowledge as to the technical workings of its electronic software/database" and "do not have access to the data dictiona[ries]." (See Exhibit B at pp. 5 and 7).

4

1.     The Requests are neither vague nor ambiguous

"The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." See Johnson v. Kraft Foods North Am., Inc., 2006 U.S. Dist. LEXIS 82990 at *19 (D. Kan. November 14, 2006). Here, Defendants have not established that these requests are vague or ambiguous. In particular, Defendants identify several terms and phrases it deems to be vague, ambiguous, or otherwise "unclear" including: (1) "any reports regularly generated or printed;" (2) "any record layout, data dictionary, or other document that identifies or describes the records or fields in any file or table on this database;" (3) "coding sheets, code books, or other documents used to interpret or explain codes or abbreviated entries on the database;" and (4) "hard-copy printouts of any look-up tables on this database that explain coded or abbreviated entries." (Exhibit B at pp. 5 and 7). Generally "a party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the [discovery requests]." Id. at *19. Notwithstanding, in a pre-emptive effort to clarify any conceivable ambiguity, Plaintiff provided definitions of the relevant terms in the General Definitions and Instructions of the EEOC's Request for Production of Documents. (See Exhibit A at pp. 5-6). In addition, Plaintiff's good faith letter provided further clarification along with a brief tutorial on database construction. (See Exhibit C at pp. 2-3). Despite these efforts, Defendants have failed to produce the requested documents and information.

Similarly, the request for documents that identify or describe "any record layout, data dictionary, or other document[s] that identifies or describes the records or fields in any file or table" contained in the "Famous" and "Datatrack" databases leave little to the imagination. In response, Defendants state that they "have limited knowledge as to the technical workings of its electronic software/database[s]." (See Exhibit B at 5 and 7). However, even if true, and

assuming Defendants' ignorance is an acceptable objection (which it is not) these are not interrogatory requests seeking a detailed discussion of the technical workers of their electronic database systems. The types of documents requested are generally provided by the software developer in the form of prepackaged reports imbedded in the respective software packages, and/or are maintained in hardcopy format, and/or are readily accessible from the database administrators. Plaintiff is merely requesting pertinent, readily assessable information that will aid in Plaintiff's interpretation of abbreviations and terms used in the databases. While each database is different, and users typically utilize unique codes, abbreviations, or other short-hand to populate the record fields of their particular database, this information is necessary to understand Defendants' database construction and the information contained therein.

Furthermore, the requests for manuals, guidebooks or instructions that describe the databases and their records or fields are equally straightforward and unambiguous. Generally these types of documents are used for training new hires on the various systems and databases and should be readily available. Even if Defendants do not maintain formal training manuals or guidebooks, it is difficult to believe that they do not have (nor have access to) documentation that aids in interpreting the terms and abbreviations maintained in, or generated by their databases.

Finally, with regard to the requests for "the first ten pages of data from any reports regularly generated or printed from these databases," a precise definition of the information sought is articulated in Section L of the General Definitions and Instructions of the EEOC's Request for Production of Documents. (See Exhibit A at pp. 5-6). The provided definition includes examples of the types of reports and information the Plaintiff seeks, including but not limited to "weekly payroll registers, weekly employee termination reports, weekly new

employee hire reports, monthly financial recap reports, etc." Additionally, Plaintiff's good faith letter encouraged Defendants to revisit the definition and examples if further clarification was required. Accordingly, there is simply no ambiguity with regard to the reports requested. At a minimum, Defendants were able to understand that that the phrase included payroll reports and weekly time and production reports because in their response they stated that "the only report regularly generated from Famous is payroll" and there are regular reviews of the "weekly time and production data for errors and/or incomplete data." However, Defendants have failed to provide Plaintiff with the first 10 pages of either of these reports or any additional reports that are germane to these requests.

        2.      <u>The Requests are not unduly burdensome, are narrowly tailored, and are relevant to the claims and defenses of this lawsuit.</u>

As the requested information is prepackaged by the database vendors and/or is imbedded in the Defendants' databases, and the sample reports are regularly generated by Defendants, there is no evidence that their production would impose any more than a <u>de minimus</u> burden.

Likewise, Defendants claims that the requests are overly broad are similarly without merit. <u>See</u> <u>Kraft Foods North Am. Inc.</u>, 2006 U.S. Dist. LEXIS 82990 at *30-31 ("a request may be overly broad on its face if it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope.") As discussed above, the terms within the requests were narrowly defined and additional clarification was provided in the Plaintiff's good faith letter. The requests apply to specific information rather than broad general categories. Therefore, the Defendants' objection is improper. <u>Id.</u> at *31 ("When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information of documents, the request will not be deemed objectionable on its face.")

7

Additionally, Defendants have not established that the requests are irrelevant.  See Kraft Foods North Am. Inc, 2006 U.S. Dist. LEXIS 82990 at *26 ("When the discovery sought appears relevant, the party resisting the discovery has the burden of establishing the lack of relevance.")  The production of these manuals, data dictionaries, record layouts, and reports (or at least a representative sampling of the reports consisting of the first 10 pages of each) provides Plaintiff the opportunity to see what information is kept on the database, how that information is used, and informs future discovery requests.  Understanding the use and interconnectivity of the data maintained in a database allows for more targeted, relevant, and less burdensome supplemental discovery requests.  Milinazzo v. State Farm Insurance Co., 2007 U.S. Dist. LEXIS 90980 at *5 (S.D. Fla. December 11, 2007) ("information requested via discovery is relevant if it appears reasonably calculated to lead to the discovery of admissible evidence.")  Therefore, the Defendants should be ordered to produce the requested documents.

As the requests are clear, unambiguous, relevant, and pose no undue hardship on Defendants, Defendants should be compelled to provide this information without further delay.

    **B.**    **Request for Production # 4:  Defendant should be required to produce documents or electronically stored information that describes the Defendants email system during the period of January 1, 2009 to the present.**

Request number 4 seeks information pertaining to Defendants' email system and the methods and protocols for backing-up the system, purging emails and email retrieval. (Exhibit A at p. 10).  Though providing no objection to the request, Defendants did not provide a single document, responding that they are "not aware of any responsive documents."    (Exhibit B at p. 8).  Even if Defendants do not maintain "official" policies and protocols with regard to email retention, purges, back-ups, and/or retrieval, there should be some documentary record pertaining to how electronic communications are managed.  At minimum, there should be some

document or electronic record that identifies the email system(s) utilized by Defendants. This information is nonprivileged and relevant and should be produced without delay. See Prism Techs., LLC v. Adobe Sys., 2011 U.S. Dist. LEXIS 145990 at *11-12 (D. Neb. Dec. 16, 2011) ("Federal Rule of Civil Procedure 26(b) allows for broad discovery of 'any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.'").

      **C.**    **Request for Production # 6: Defendants should be required to produce personnel files, disciplinary records, work assignments, work schedules and payroll records for Defendants' employees during the calendar years 2009, 2010 and 2011.**

Request number 6 seeks "the complete and unabridged personnel files, disciplinary records, work assignment schedules, picking, planting, and/or packing schedules, and payroll records for each and every individual employed by the Defendants for the calendar years 2009, 2010 and 2011." Defendants object that this request is "vague, ambiguous, overly broad, unduly burdensome and seeks confidential information that is irrelevant to the parties' claims or defenses."

The request is clear, narrowly tailored, relevant, and seeks information that is readily accessible as it is presumably maintained in Defendants' hard copy personnel files and electronically in the Famous and Datatrack databases. The personnel files, disciplinary records, picking assignments, work schedules, and payroll records for Defendants' workers strike at the essence of this lawsuit and are critical to Plaintiff's case; in part, that Defendants engaged in a pattern or practice of unlawful discrimination by placing individuals who were born in the United States and of American national origin in less desirable job assignments and providing

9

fewer work opportunities on the basis of their national origin, resulting in such persons earning less than their non-American comparators.

Though Plaintiff concedes that Defendants have provided four hundred and thirty seven (437) pages of documents that purport to represent the complete hard-copy "personnel files" of the "Plaintiff-Intervenors," this production is wholly incomplete. First, Defendants' production was limited to those individuals who are named Plaintiff-Intervenors, while ignoring the remaining class of aggrieved individuals from 2009 to 2011 for which Plaintiff seeks relief, and the comparative class of non-US national origin workers with whom the assignments, schedules, and pay must be compared. Second, the production-set consists of a patchwork of incomplete picking assignments, work schedules, and payroll records (among other information) that standing alone, provide little insight into the pattern or practice of discriminatory acts and behavior by Defendants that Plaintiff alleges. Full and complete records evidencing employee attendance, what and when particular produce was planted and picked, by whom, and the compensation received resides on Defendants' databases and should be produced.

Moreover, under the H-2A Temporary Agricultural Program (which Defendants participate), Defendants are required to keep certain records for each employee, including but not limited to: hours each worker actually works; time "offered" to the worker but which the worker "refused" to work; a wage statement showing hours of work, hours refused, pay for each type of crop, the basis of pay (i.e., whether the worker is being paid by the hour, per piece, "task" pay, etc.); and records concerning any worker who was terminated and the reason for such termination. See generally 20 C.F.R. 655. At a minimum, Defendants are required by the Department of Labor to maintain records that include broad swaths of information that Plaintiff's seek (hours worked, crop picked, pay, and if applicable, termination reason for each employee)

10

and therefore should be readily available for production. Complete records for all Defendants' employees for the 2009, 2010, and 2011 calendar years must be produced.

Defendants also claim that the request seeks confidential information. While "a court may limit discovery where a party seeks confidential information," Defendants have failed to explain how any of the information sought is confidential. See Lightsey v. Potter, 2006 U.S. Dist. LEXIS 76617 at *6 (N.D. Ga. October 12, 2006), citing Gober v city of Leesburg, 197 F.R.D. 519, 521 (M.D. Fla. 2000) (The party resisting discovery has "the initial burden of showing that the information is confidential."). Furthermore, Defendants' mere assertion that certain unidentified information is "confidential" does not serve as an absolute bar to production. See Cory v. Aztec Steel Building, Inc., 225 F.R.D., 667, 670-71 (D.Kan. 2005) ("confidentiality of documents does not equate to privilege [], information is not shielded from discovery on the sole basis that such information is confidential."). Finally, Plaintiff doubts that information regarding a particular farmworker's attendance, pay, record on which day he/she picked cabbage or cucumbers, discipline, and/or termination would constitute "confidential" information such that non-production would be excused or permitted.

**D.    Request for Production # 7: Defendants should be required to produce information indicating the interrelationship of Hamilton Growers and Southern Valley Fruity and Vegetable Inc.**

Request number 7 seeks "contracts," "agreements," "arrangements" between and amongst Defendants Hamilton Growers and Southern Valley with regard to their coordinated business, management, labor, ownership, banking, accounting, and real estate interests. (See Exhibit A at pp. 8-9). Defendants object to these requests as being "vague, ambiguous, overly broad and unduly burdensome." The Defendants also claim that the request seeks information that is confidential, protected by the attorney-client privilege and/or attorney work product

11

doctrine, irrelevant and was otherwise prepared in anticipation of litigation." (Exhibit B at p. 10). To date, Defendants have not produced a single document that is responsive to this request.[1]

The question of whether Defendants' Hamilton Growers, Inc. and Southern Valley Fruit and Vegetable, Inc. (and additional related entities) constitute an "integrated enterprise" making all entities jointly and severally liable under Title VII for the unlawful discriminatory actions of Defendant(s) is an integral component of this lawsuit, warranting considerable discovery. Accordingly, information that pertains to the interrelation of Defendants' operations, centralized control of labor relations, common management and ownership is not only relevant, but essential. Moreover, Plaintiff's requests are narrowly tailored to focus on certain indicia of commonality necessary to prove an integrated enterprise.

Furthermore, it is doubtful that requiring Defendants to produce business, management, labor, ownership, banking, accounting and real estate documents which are presumably maintained in the ordinary course of business, imposes any undue burden. Additionally, though Defendants claim that the request seeks "confidential information," they fail to identify a single document or record they consider to be confidential. Finally, to the extent that Defendants assert any cognizable attorney-client or attorney work product privilege, Plaintiffs seek only non-privileged documents and information pertaining to Defendants' long-standing and ongoing coordinated business, management, labor, ownership, banking, accounting, and real estate interests, not any documents that were prepared in anticipation of litigation or trial.

## III.    Conclusion.

Accordingly, Plaintiff EEOC respectfully requests this Court to grant its Motion to Compel and to order Defendants to provide complete discovery responses to Plaintiff's Request

---

[1] Plaintiff notes that certain limited, unaudited financial documents have been "produced" for the express and limited purpose of facilitating mediation.

numbers 2-4, and 6-7, within seven (7) days of this Court's Order, and to provide any additional relief this Court deems appropriate.

 Respectfully submitted, this 29th day of October, 2012.

        s/James L. Cerwinski
        James L. Cerwinski
        EEOC - Trial Attorney
        Georgia Bar No. 277846

        EEOC – Baltimore Field Office
        10 South Howard St., 3rd Floor
        Baltimore, MD 21201
        Telephone:  (410) 209-2220
        E-mail: james.cerwinski@eeoc.gov