**EEOC et al v. Hamilton Growers, Inc., et al**
**USDC MDGA – Civil Action No. 7:11-cv-00134HL**

# EXHIBIT C

Plaintiff EEOC May 21, 2012 "Good Faith" Letter



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Atlanta Status Line: 866-408-8075
Atlanta Direct Dial: (404) 562-6887
TTY (404) 562-6801
FAX (404) 562-6909/6910
Website: www.eeoc.gov

May 21, 2012

**VIA EMAIL ONLY**

Joe Shelton
Terri Stewart
Fisher & Phillips, LLC
1075 Peachtree Street, NE
Suite 3500
Atlanta, GA 30309
jshelton@laborlawyers.com
tstewart@laborlawyers.com

RE:   EEOC et al., v. Hamilton Growers, Inc., et al
      Civil Action No. 7:11-cv-134-HL

Dear Joe and Terri:

We are in receipt of your clients' responses to our Request for Production of Documents. Please accept this letter as our good faith effort to attempt to resolve an apparent discovery dispute pursuant to Rule 37(a)(1), Federal Rules of Civil Procedure.

In response to our Request of Production of Documents, you have not produced, nor have you represented that you will produce, a single document that is responsive to the Commissions' requests. Moreover, Defendant's objections to the Commissions' Requests are formulaic, repetitive and erroneous. Each Request is understandable, seeks information that is on its face unprivileged, is relevant to the claim or defenses in this case, and is under the custody or control of the Defendants.[1] Therefore, production of the requested documents should be made. To avoid the filing of Motion to Compel, I must receive supplemental responses, with responsive documents, by Wednesday, May 23, 2012.

**Request Nos. 2&3**:

These Requests seek documents related to the "Famous Software" and "Datatrack" systems utilized by your client to record and store personnel information for Defendant employees. Specifically, the Commission requested manuals, guidebooks, or instructions that describe these database and the records or fields that the databases contain.

---

[1] See Fed. R. Civ. P. 26(b)(1).

May 21, 2012
Letter to Joe Shelton and Terri Stewart
Page 2

Moreover, the Requests relate to documents that identify or describe the record layout, data dictionaries and other documents that explain coded or abbreviated entries for any personnel information contained in the "Famous" and "Datatrack" databases.

Finally, the Commission requested copies of the first ten pages of data from any reports regularly generated or printed from the "Famous" and "Datatrack" databases.

First, you objected to the Requests as being "vague and ambiguous." Moreover, you responded that "Defendants are unclear as to the meaning of the phrase " 'any reports regularly generated or printed.' " I refer you to the language contained in Section L of the General Definitions and Instructions of the EEOC's Request for Production of Documents, which states:

> '[R]eports regularly generated or printed.' This phrase refers to reports or documents that are generated periodically, without a special request, after production of the report or document has been initially created. Such reports might be, for example, weekly payroll registers, year-end employee earnings reports, W-2 reports, semi-annual or annual succession planning reports, weekly employee termination reports, weekly new employee hire reports, weekly time and attendance reports, monthly financial recap reports, weekly reports of deliveries or sales, monthly reports of new account sales by sales representatives, and monthly revisions of phone directories. These are examples, only, and are not a complete list of documents that may be in your possession that are reports regularly generated or printed.
>
> 'Reports regularly generated or printed' may include reports that remain as electronically stored information. In that event, you are requested to produce such reports in their native electronic format on a CD or DVD.

Accordingly, there is simply no ambiguity with regard to the reports requested. The first ten pages of report regularly generated or printed from the "Famous" and/or "Datatrack" databases should be produced, including but not limited to the "payroll" report (from Famous) and the weekly time and production reports (from Datatrack) as identified in your Responses to Requests No. 2 & 3 respectively.

Furthermore, the Requests are neither vague nor ambiguous with regard to the requests for "manuals, guidebooks, or instructions that describe these database and the records or fields that the databases contain." Similarly, the Requests for "documents that identify or describe the record layout, data dictionaries and other documents that explain coded or abbreviated entries for any personnel information contained in the "Famous" and "Datatrack" databases" leaves little to the imagination. However, in your Responses you indicate that Defendants have limited knowledge as to the technical workings of its electronic software/database. To be clear, these are not Interrogatory requests and the documents requested are either prepackaged reports contained in the respective software packages, and/or are maintained in hardcopy format, and/or are readily accessible from the database administrators.

May 21, 2012
Letter to Joe Shelton and Terri Stewart
Page 3

Notwithstanding, and in the interest eliminating any confusion, I offer the following short tutorial on database construction. A database is an organized collection of information in computer readable form. Databases are almost always used to keep track of personnel and payroll information. They can be thought of as electronic filing cabinets full of information such as personnel files or time cards. A database is composed of one or more files, often referred to as tables. Files are listings of a common type of information like names and addresses, or job histories, or hours worked.

Files are composed of records, like rows in a table, and fields, like columns in a table. In a name and address file there would generally be one record (row) per employee. In a job history file there would generally be one record (row) for each job ever held by each employee. In an hours-worked file there might be one record (row) for each hours type (regular, overtime, etc.) for each day worked for each employee.

Each record (row) is broken down into fields (columns) for particular items of information. The records in a name and address file might have separate fields for employee number, employee last name, employee address, employee phone number, etc. The records in a job history file might contain fields for employee number, job title, department, job start date, etc. The records in an hours-worked file might contain fields for employee number, date worked, hours type, hours worked, and hourly rate.

Record layouts and data dictionaries are in a class of documents that describe the structure and contents of databases and their constituent files and fields. These documents generally identify the fields in each database file, where in each file record a particular field is located, and how much of what kind of information is stored in the field. A record layout for a name and address file might indicate that the employee zip code is the tenth field, or that it occupies the 101st through 105th spaces in a record, and that it is a five-digit number.

Depending on the level of sophistication, record layouts or data dictionaries may contain brief descriptions of the contents of the fields, or may contain explanations for codes that appear in a field, like M for male or F for female. Sometimes this information is found in a codebook document. Or, especially in more contemporary databases, codes and their explanations are relegated to their own files, called look-up tables. For example, a record in a job history file might contain a job code field. The job title associated with that job code might be found in a job title look-up table.

Other documents often associated with databases are operator manuals or data entry manuals. These may provide instruction in how to use the database, and, in particular, how to enter or edit information in the database. A data entry manual may contain pictures of the computer screens that a data entry person would see on the computer. These screens would show the fields that are to be filled in. The screens might be accompanied by instructions as to what fields have to be filled in, what codes to use, what the rules are for a valid data entry, etc.

As I have previously articulated to you, these are straightforward requests that are intended to guide and inform the Commission's future requests for data production and allow for eventual

May 21, 2012
Letter to Joe Shelton and Terri Stewart
Page 4

data analysis. Despite your objections to the contrary, these Requests seek documents that are relevant to Plaintiff's claims, and as such, should be produced without delay.

**Request No. 4.**

This Request seeks information pertaining to Defendants' email system and the methods and protocols for backing-up the system, purging emails, and email retrieval. You responded that there are no responsive documents. At a minimum, there should be some document or electronic record that identifies the email system(s) utilized by Defendants. Moreover, even if Defendant does not maintain "official" policies or protocols with regard to email retention, purges, back-ups, and/or retrieval, there should be some documentary record pertaining to how electronic communications are managed. These documents should be produced without delay.

**Request No. 6.**

This Request seeks "the complete and unabridged personnel files, disciplinary records, work assignment schedules, picking, planting, and/or packing schedules, and payroll records for each and every individual employed by Defendant(s) for the calendar years 2009, 2010, and 2011." You objected that the request is vague and ambiguous, is overly broad and unduly burdensome, and seeks confidential information. Your objections are not well taken.

The request is clear, narrowly tailored, and seeks information that is readily accessible as it is presumably maintained in Defendants' hard copy personnel files and electronically in the Famous and Datatrack databases. The picking assignments, work schedules, and payroll records for Defendants' workers strike at the essence of this lawsuit and are critical to Plaintiff's case. Finally, without further explanation, I fail to see how a farmworkers' disciplinary record, pay, and record evidencing on which day he/she picked cabbage or cucumbers would constitute confidential information such that its non-production would be excused or permitted by the Court. This information should be produced without further delay.

**Request No. 7.**

This Request seeks information pertaining to the integration of operations between Hamilton Growers, Inc. and Southern Valley Fruit & Vegetable, Inc. In your response, you object to the requests as being "overly broad and unduly burdensome. . . [it seeks] information irrelevant to the parties' claims or defendants . . . and seeks disclosure of information protected by attorney-client privilege and/or attorney work product doctrine, or was otherwise prepared in anticipation of litigation."

As we have discussed for months, the question of whether Hamilton Growers, Inc. and Southern Valley Fruit & Vegetable, Inc. constitute an "integrated enterprise" is an integral component of this lawsuit, warranting considerable discovery. These documents will demonstrate (or not demonstrate) the connection between the companies and whether their operations are interrelated and, therefore, are relevant and subject to discovery. See Walker v. Boys & Girls Club of Am., 38 F. Supp. 2d 1326, 1332 (M.D. Ala. 1999); see also Thornton v. Mercantile Stores Co., Inc., 13

May 21, 2012
Letter to Joe Shelton and Terri Stewart
Page 5

F. Supp. 2d 1282, 1291-92 (M.D. Ala. 1998).  We are entitled to discover how and to what extent the two companies (and other entities owned and operated by Kent and Wanda Hamilton) are interrelated.

If you have any questions, or wish to discuss this letter, please do not hesitate to contact me at (404) 562-6986.  If your clients do not amend their responses and produce the requested documents by Wednesday, May 23, 2012, we will have no other option than to file a motion to compel with the Court.

Sincerely,

*s/ James L. Cerwinski*

James L. Cerwinski

Cc:  Dawson Morton, Esq. (via email)
     Leah Lotto, Esq. (via email)
     Robert Dawkins, Esq. (via email)
     Sairalina Corneil, Esq. (via email)