IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| and | : | 7:11-CV-134-HL |
| | : | |
| ZANDREA WADE, et al. | : | |
| | : | |
| Plaintiff-Intervenors, | : | |
| v. | : | |
| | : | |
| HAMILTON GROWERS, INC, et al | : | |
| | : | |
| Defendants. | : | |

**CONSENT DECREE**

### I.    RECITALS

**1.**     This action was instituted on September 29, 2011 by the Equal Employment Opportunity Commission (the "EEOC" or the "Commission") against the Defendant Hamilton Growers, Inc., pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), to remedy the alleged wrongful practices identified in the Complaint filed in this action.

**2.**     On October 29, 2012, the EEOC moved to Amend its Complaint adding Southern Valley Fruit & Vegetable, Inc., Hamilton Produce, LP, Kenda Properties, LP, WK Holdings, LLC, WK Mex Properties, LP, and WKW, LLC as additional named Defendants ("Defendants").

**3.**     In its Amended Complaint, the Commission alleges that from January 2009 through the

2011 growing season, Defendants had engaged in unlawful employment practices at its Norman Park, Georgia location, in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by unlawfully subjecting Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Fiona Dawson, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammy Myricks, Jimmy Pasley, Courtney Ranger, Ronnie Severson, Quincy Thornton, Zandrea Wade, Alicia Ware and a class of employees of American national origin to a pattern or practice of discriminatory treatment by disproportionately terminating them based on their national origin; intentionally and unlawfully terminated a group of African American employees based on race; and intentionally and unlawfully subjected American employees to disparate terms and conditions of employment based on their national origin and/or race.

**4.**     Plaintiff-Intervenors Kathern Bentley, Johnny Blackwell, Latoya Blackwell, Michael Blakely, Voneka Butler, Michael Collins, Kimble Daniels, Jerry Davis, Earl Davis, Fiona Dawson, Nicolas Edwards, Michael Edwards, Rachel Flemming, Rickey Forrest, Terrick Grant, Willie Harmon, Michael Harris, Michael Hawkins, Jaris Henry, Janelle Jenkins, Richard Jones, Stephanie King, Joanna Lee, Johnny Moore, Sammie Lee Myricks, Jimmy Pasley, Courtney Ranger, Ashley Richardson, Randy Robinson, Ronnie Severson, Gary Sims, Connie Slater, Javarus Stewart, Shagarie Thomas, Quincy Thorton, Zandrea Wade, Alicia Ware, Kareem Washington, Willie White, and Deborah Williams filed a Complaint in Intervention on February 19, 2012 against Defendant Hamilton Growers, Southern Valley Fruit and Vegetable, Inc., and Kent Hamilton.   The Plaintiff-Intervenors moved to file a Second Amended Complaint on October 29, 2012 which added Eddie Cole, Cynthia Day, Kreshonda Davis, Matthew Dennis, Jack Jackson, Misty Jackson, Terrance King, Bobbi Jean Prosser, and Angela Stubbs as Plaintiff-

Intervenors and added Hamilton Produce, LP, Kenda Properties, LP, WK Holdings, LLC, WK Mex Properties LP, and WKW, LLC as additional named Defendants.

5.      Defendants, the Plaintiff-Intervenors, and the EEOC (the "Parties"), desiring to settle this action by an appropriate Consent Decree, agree to jurisdiction of this Court over the Parties and the subject matter of this action, and agree to the power of this Court to enter into this Consent Decree enforceable against Hamilton Growers, Inc., Southern Valley Fruit & Vegetable, Inc., Hamilton Produce, LP, Kenda Properties, LP, WK Holdings, LLC, WK Mex Properties, LP, and WKW, LLC.

6.      The Parties agree that settlement of these matters without further protracted, expensive, and unnecessary litigation is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving this civil action.

7.      The Parties agree that this Decree is voluntarily entered into by the Parties, that it shall not constitute an adjudication and finding on the merits of the case and shall not be construed as an admission by Defendants that they violated any laws.  Defendants deny that they engaged in any conduct in violation of Title VII or of any other applicable law or regulation.

8.      This Decree is final and binding upon the Parties, their successors and assigns.  Further, the Parties agree jointly to defend this Consent Decree should it be challenged by a non-party. The Parties agree to bear their own legal fees and costs in any such defense, provided, however, the Commission shall not be required to intervene as a defendant in any action brought against Defendants.

9.      The Parties agree that this Decree fairly resolves the issues alleged in this lawsuit, and constitutes a complete resolution of all claims that have been made or could have been made by the Commission and Plaintiff-Intervenors in this action based on an alleged pattern or practice of

disparate treatment because of national origin or race, or any decisions affecting the terms and conditions of any class member's employment because of national origin and/or race in its Norman Park, Georgia location for the 2009, 2010, 2011 growing seasons.

10.     The Parties' officers, agents, employees, and successors shall not interfere with the relief herein ordered, but shall reasonably cooperate in the implementation of this Decree.   This provision shall not expand the Court's personal jurisdiction to any natural person presently beyond that jurisdiction.

11.     If Defendants' operations and/or business interests are sold or leased during the term of this Decree, Defendants shall promptly send written notice to the EEOC and counsel for the Plaintiff-Intervenors of the sale or lease.  Such notice shall include the following information: (a) the name of the buyer or lessee; (b) the effective date of the sale or lease of the interest and/or asset; (c) Defendants' position as to whether the buyer or lessee is a Covered Buyer (as defined herein); and (d) whether the buyer or lessee is a Related Entity (as defined herein).   Upon reasonable notice, Defendants shall make a copy of the asset purchase agreement or lease agreement available for the EEOC and counsel for Plaintiff-Intervenors' inspection and review at a mutually agreeable time and location.   Nothing in the paragraph changes or modifies the definition of "Covered Buyer" as set forth in paragraph 11.01.

11.01   **Covered Buyer** – A person(s) or an entity(ies) to whom Defendants sell or lease all or part of its operations and/or business interests during the Term of this Decree who: (a) substantially continues the business operations of growing, packing, and selling fruit and vegetable produce; (b) employs the same or substantially the same work force; (c) employs the same or substantially the same supervisory personnel; (d) maintains the same or substantially the same jobs under the same or substantially the same working

conditions; and (e) uses the same or substantially the same machinery, equipment and methods of production.

**11.02   Related Entity** – For purposes of this Consent Decree, a "Related Entity" is: (a) a business entity and/or person(s) that owns or holds, or held within the preceding five (5) years from the Effective Date of this Decree, any financial or ownership interest in Hamilton Growers, Inc., Southern Valley Fruit and Vegetable Inc., Hamilton Produce, LP., Kenda Property, LP., WK Mex Properties, LP., WK Holdings, LLC., WKW, LLC., Compania Agricola Valle de Sur. De R.L., Southern Valley de Yucatan S. de R.L.,; (b) any individual, and/or formal or informal business entity formed, owned, operated, financed, or in any other way related to Ken T. Hamilton, Wanda Hamilton-Tyler, and their first, second, and third degree relatives (spouse(s), parent(s), siblings, children, grandparent(s), uncle(s), aunt(s), nephew(s), niece(s), half-sibling(s), and first cousin(s)); and (c) any sale or lease of a majority of Defendants' assets made in connection with estate planning, estate tax planning, gift tax planning, income tax planning, or in connection with an Event provided for under a Shareholders' buy-sell agreement, where such sale or a lease is to any member of such Member's immediate family, or a family trust, including a charitable remainder trust, corporation, limited liability company, or partnership controlled by such Member or members of such Member's immediate family, or another Person controlling, controlled by, or under common control with such Member.

**12.**    If Defendants' operations and/or business interests are sold or leased to a Covered Buyer that is a Related Entity (as defined herein), all monetary and non-monetary conditions of the Decree will apply to the Covered Buyer.

13.     If Defendants' operations and/or business interests are sold or leased to a Covered Buyer that is not a Related Entity (as defined herein), the Covered Buyer shall be informed of the terms of this Consent Decree, and all terms and conditions of this Decree will apply to the Covered Buyer, however, Defendants' outstanding monetary obligations shall become immediately due and payable.

14.     In the event of a sale of a majority of Defendants' assets to any other buyer or a lease of substantially all of Defendants' assets to any other entity, all outstanding payments shall become immediately due and payable, except if such sale or lease is to a Related Entity.

15.     The Parties desire that the Court approve this Decree. Upon approval, the Parties will begin taking certain actions as set forth below.

16.     The Parties and their counsel have entered into this Consent Decree with the hope and expectation that Defendants will enjoy, for many years to come, a strong and mutually beneficial relationship with all their employees, including their African-American employees and those employees of American national origin.

17.     **THIS DECREE CONTAINS IMPORTANT DEADLINES. FAILURE TO MEET THESE DEADLINES CAN CAUSE RIGHTS TO BE LOST.**

NOW THEREFORE, it is the finding of this Court, made on the pleadings and the record as a whole, that this Decree constitutes a fair and equitable resolution.

IT IS FURTHER ORDERED, DECREED AND ADJUDGED AS FOLLOWS:

## II.     JURISDICTION

18.     This Court has jurisdiction over the Parties to and the subject matter of the Action. The action asserts claims that, if proven, would authorize the Court to grant the monetary and equitable relief set forth in this Consent Decree. The Defendants consent to the filing of the

Amended Complaint of the EEOC and the Second Amended Complaint of the Plaintiff-Intervenors, and the Court orders those Complaints filed and hereby find those Complaints are the operative Complaints in this Action.  The Parties agree that the Court has the power to enter into this Consent Decree, without modification, and to grant monetary and equitable relief set forth herein.  The Parties further agree that the Consent Decree is final and binding upon them and their respective successors and assigns.  The Parties further agree that this Consent Decree conforms with the Federal Rules of Civil Procedure and Title VII, and is not in derogation of the rights and privileges of any party.  The Court shall retain jurisdiction for the duration of this Consent Decree for the purpose of enforcement of the Decree.  This Consent Decree cannot be changed, altered or modified except by written consent of the Parties with the approval of the Court.

### III.    SCOPE

**19.**    This Decree resolves all claims for both monetary and non-monetary relief on the basis of the allegations that for the 2009, 2010, and 2011 growing seasons, Defendants, at their Norman Park, Georgia location, unlawfully subjected a class of American employees to a pattern or practice of discriminatory treatment by disproportionately terminating them based on their national origin; intentionally and unlawfully terminated a group of African American employees based on race; and intentionally and unlawfully subjected American employees to disparate terms and conditions of employment based on their national origin and/or race, as well as any and all other claims for those growing seasons which were raised in this Action or which could have been raised in this Action related to allegations of disparate treatment of race or national origin.  Accordingly, this Consent Decree resolves such claims for Defendants' employees who meet the following criteria:

a.      They were employed by Defendants at any point during the 2009, 2010, and 2011 Work Agreements;

b.      They were terminated prior to the cessation of the 2009, 2010, and/or 2011 Work Agreements;

c.      They are of American national origin and/or African American;

d.      They have not instituted an action seeking relief for a claim alleged in this action that remains pending as of the date of final Court approval of this Consent Decree.

20.     This Decree resolves all issues and claims arising out of the EEOC's Complaint.  This Decree does not affect the EEOC's right to process, in accordance with standard Commission procedures, other charges, if any, filed by individuals against Defendants alleging violations of Title VII or any other statute enforced by the EEOC.

21.     Any individual charges of discrimination filed with the EEOC after the Effective Date of this Consent Decree, based on conduct alleged to have occurred prior to the Effective Date of this Consent Decree, will be administratively processed by the EEOC in accordance with its standard procedures.

### IV.     MONETARY RELIEF FOR CHARGING PARTIES, PLAINTIFF-INTERVENORS, AND ELIGIBLE CLASS MEMBERS

**22.     Settlement Fund Amount**

In full and final settlement of all monetary claims in connection with this action, including those of Claimants and Intervenor-Plaintiffs, Defendants shall pay the gross sum of $500,000 into a Qualified Settlement Fund account ("QSF") to be established and administered by a third-party settlement claims administrator ("Administrator"), discussed below.   Of this total amount, payments are to be allocated as follows:

    a. $303,700 to be apportioned among the Intervenors as follows: $7,300 to each Charging Party and $5,500 to each Plaintiff-Intervenor who is not also a Charging Party less any deduction for their proportional share of Administrator Expenses as detailed in Paragraph 30.01;

    b. $166,300 to be apportioned among remaining Eligible Claimants less any deduction for their proportional share of Administrator Expenses as detailed in Paragraph 30.01;

    c. $30,000 to Plaintiff-Intervenors' counsel, Georgia Legal Services, as attorney's fees of which $5,000 shall be used for payment of Administrator's expenses.

**23.** Payments made under this Consent Decree to Charging Parties, Plaintiff-Intervenors and Eligible Claimants will be apportioned 20% as "wages" and 80% as compensatory/punitive damages. Defendants shall be responsible for paying their share of all applicable payroll taxes (e.g., FICA).

**24.** **Payments into Settlement Fund**. Payments by Defendants into the QSF are to be made as follows:

**24.01** A payment of $166,667 to be made on or before April 30, 2013.

**24.02** A payment of $166,667 to be made on or before July 31, 2014.

**24.03** A payment of $166,666 to be made on or before October 31, 2015.

**24.04** "Payment Holiday." For payments due to the QSF on July 31, 2014 or October 31, 2015, Defendants may elect to declare a one-time "payment holiday" for either payment, but not both. In the event that Defendants elect to invoke this "payment holiday" provision, Defendants shall pay any remaining balance due, in addition to a 20% surcharge added to the amount due, on or before April 30, 2016. Defendants shall report

in writing their intention to invoke a "payment holiday" to the EEOC, counsel for Plaintiff-Intervenors, and the Administrator as soon as is reasonably practical, however notice shall be provided no less than thirty (30) days in advance of the corresponding scheduled payment due date.

25.    Defendants hereby expressly agree that if any payment under this Decree is not timely made (meaning by the payment due date or within 15 days after the date if Defendants have provided written assurance by the due date that the payment will be made), except for Defendants election of a one-time "payment holiday" as described in Section 24.04, or if any Defendant files for bankruptcy, such action shall constitute an immediate event of Payment Default under the terms of this Decree.  Further, in the event of a bankruptcy filing by any one of them, Defendants agree to schedule One Million Five Hundred Thousand Dollars ($1,500,000) as a liquidated, non-contingent, undisputed claim owed to the Plaintiff, Plaintiff-Intervenors, and Plaintiff-Intervenors' counsel.  Upon payment default, Defendants further consent to the Court entering a default judgment against them in the amount of One Million Five Hundred Thousand Dollars ($1,500,000) plus pre-judgment interest accruing from the date of Defendants' default to the date that the Court awards the default judgment.  Defendants further consent to the lifting of any bankruptcy automatic stay for the purpose of this judgment amount being entered with the Court.

26.    **Administration of Class Settlement**.

26.01  **The Class** – The class will consist of all persons who: (1) are of U.S. national origin and/or African American; (2) were employed as farmworkers under the terms of an H2-A job order for Defendants during the 2009, 2010, or 2011 growing seasons; (3) were involuntarily terminated or constructively discharged by Defendants prior to the end of

the applicable growing season; and (4) who are determined to be eligible for a monetary award under this Consent Decree.

**26.02   Charging Parties and Plaintiff-Intervenors** – With respect to Charging Parties and Intervenors, the Parties have determined their amounts of recovery.   Accordingly, Charging Parties and Plaintiff-Intervenors are not eligible to participate in the Claims Process set forth below.   In the event a Charging Party or Plaintiff-Intervenor declines to accept the recovery amount determined by the Parties, such amount will revert into the Settlement Fund Account and be redistributed in accordance with the Claims Process set forth below.

**26.03   Claims Process**

      **26.03.01      Preparation of Potential Class List** – As soon as practicable, the EEOC will provide Defendants with a list of names of persons who worked during the 2009, 2010, and 2011 growing seasons and for whom the EEOC does not have contact and/or personal identification information.   Within thirty (30) days after receipt of such list, and on a continuing basis as necessary, Defendants shall provide the EEOC with all reasonably available information in Defendants' possession regarding contact information/personal identification information and information necessary to carry out the Administrator's functions, including but not limited to information necessary to enable the Administrator to make payroll tax withholdings.   Within thirty (30) days of receipt of the above information, the EEOC will provide the Administrator with a list of names

11

of persons who worked during the 2009, 2010, and 2011 growing season for whom it has contact and/or personal identification information.

**26.03.01**      **Notification Period** – For a period of one hundred fifty (150) days after the Effective Date of this Consent Decree, the Administrator shall attempt through means set forth below, to notify potential Class members of the settlement.

**26.03.02**      **Mailing to Potential Class Members** – Within thirty (30) days from receipt of the Potential Class List from the EEOC, the Settlement Administrator will mail the following materials to each individual: (1) a cover letter drafted by the EEOC, clearly stating the deadline for submission of claims, and providing a toll-free telephone number; (2) a Class Claim Form; and (3) a return envelope addressed to the EEOC at a post office box provided by the Administrator.

**26.03.03**      **Return Mailings -** For Potential Class Members whose notices are returned by the U.S. Postal Service as undeliverable, the Settlement Administrator will perform one (1) address search and re-mail notice once to those for whom a potentially new address can be found.

**26.03.04**      **Newspaper Notification** – The Settlement Administrator shall publish in the Moultrie Observer and Tallahassee Democrat a Notice which informs individuals of the class claims process and the deadlines for returning claim forms.  The Notice shall be published once per week until the deadline for returning claim forms.

**26.03.05**    **Toll-Free Number Notification -** The Settlement Administrator, in consultation with the Parties, will establish a toll-free telephone number with automated answering to receive telephone inquiries.  The toll-free telephone number will remain available until completion of the settlement process.

**26.03.06**    **Deadline for Submitting Class Claim Forms -** The deadline for receipt by the Settlement Administrator of Class claim forms ("Claim Form Deadline") shall be the one hundred and eightieth (180th) day after entry of this Consent Decree or thirty (30) days after the Settlement Administrator re-mails the Claimant notice, whichever is later.  For claim forms returned by a Claimant by mail, if the deadline day falls on a weekend day or federal holiday, the deadline will be the next business day after such weekend day or holiday.  Claim forms postmarked on or before the deadline date and received within seven (7) business days after the deadline date shall be considered timely.   The Settlement Administrator may request additional information from an individual claimant, if it appears that such additional information would complete the claim form.   Such additional information obtained by the Administrator shall be documented and considered part of the original claim form.

**26.03.07**    **Claims Submitted by Individuals Not on the Potential Class Member List -** If the Administrator receives Class claims from any individual who is not on the list of Potential Class Members, the

Administrator will provide to Defendants and EEOC the Claimant's name, Social Security Number, and contact information. Defendants as soon as reasonably practical will check their Human Resource and Payroll databases and advise the Administrator and EEOC whether the Claimant was employed during the relevant time period, and if so, the Claimant's dates of employment. Based on the information provided by Defendants, the EEOC will determine whether the claim should be reviewed and considered.

26.03.08     **Claimant List**. Following the deadline for submission of claims, the Settlement Administrator shall create a list of all Claimants submitted to the EEOC for consideration for inclusion in the class.

**26.04   Determination of Monetary Awards**

26.04.01     **Determination of Eligibility -** Within sixty (60) days of receipt of all Claims Forms from the Settlement Administrator, the EEOC will make a Determination regarding a Claimant's eligibility for relief and the amount to be awarded under this Consent Decree.

26.04.02     **Factors for Determination of Claimants as Class Members –** In making the Determination, the EEOC will identify Class Members by employing the following guidelines while remaining mindful that these are case by case determinations: (a) whether the termination was voluntary or involuntary; (b) the circumstances surrounding the termination decision; (c) length of employment; (d) whether the

individual is still employed by Defendants; and (e) the individual's participation in the lawsuit.

**26.05   EEOC Class Distribution Lists** – Within thirty (30) days after the EEOC has finalized its Determination of the Class claims, EEOC will provide the Settlement Administrator with a Class Distribution List.

**26.06   Notice of Determination -** Within thirty (30) days of when the EEOC issues the Class Distribution Lists as provided in Paragraph 26.05 above, the Settlement Administrator will send each Claimant a Notice of Determination, advising the Claimant whether his or her claim was approved or denied, and if the claim is approved, the monetary award amount and instructions for accepting the award, including a clear statement of the deadline for accepting.  If the claim is approved, the Notice of Determination will be sent with a tax reporting form, and a return envelope.

**26.07   Deadline for Acceptance -** The deadline for receipt by the Settlement Administrator of acceptance to the determinations will be the thirtieth (30th) day after the date the Notice of Determination is mailed by the Settlement Administrator.  If the deadline day falls on a weekend day or federal holiday, the deadline will be the next business day after such weekend day or holiday.

**27.**   EEOC shall have three (3) years after entry of this Decree, or three (3) months after Defendants make the final payment to the QSF on account of a "payment holiday," whichever is later, within which payments may be made to Eligible Claimants from the QSF.   The EEOC shall have an additional ninety (90) days within which it may designate an organization to be the recipient of any unclaimed or residual funds.

28.     **Release Agreements with Plaintiff-Intervenors** – Prior to receiving any settlement monies, each individual Plaintiff-Intervenor must execute and deliver to Defendants the signed release agreement in the form negotiated and agreed to on his or her behalf by Georgia Legal Services, along with completed W-4 and W-9 forms.

29.     **Release for Non-Represented Eligible Claimants** – In order to receive a claim share payment to this Consent Decree, an Eligible Claimant must sign and return a release agreement and completed W-4 and W-9 forms to the Administrator by the Acceptance Deadline, to be determined by the EEOC.  Eligible Claimants who fail to return the signed Release and tax forms by the Acceptance Deadline shall not be entitled to a Claim Share.

30.     **Administration.**

30.01   The QSF, and payments made from the QSF, shall be administered by the settlement claims administrator ("Administrator").  Within thirty (30) days after entry of this Decree, the parties will agree on an Administrator to administer the class claim process. Fifty percent (50%) of the fees of the Administrator and any other expenses of the administration, up to a maximum of $7,500 will be paid by Defendants.  The remaining portion of the Administrator's expenses will be paid as follows: Georgia Legal Services will pay up to $5,000 out of their attorney's fees towards Administrator Expenses and any additional expenses will be paid first from unclaimed funds and second, if necessary, will be paid from the settlement funds designated for Plaintiff-Intervenors, Charging Parties, and Class Members. In the event the Parties are unable to mutually agree upon an Administrator, the EEOC shall appoint an Administrator of its choosing.

30.02   The Administrator shall provide the following services pursuant to this Decree:

16

a.   Using parameters approved by the EEOC, assist in identification of Eligible Claimants;

b.   Locating and corresponding with such persons;

c.   Receiving and processing telephone and written inquiries from potential Eligible Claimants;

d.   Calculating monetary relief using a methodology approved by the EEOC;

e.   Tracking data regarding potential Eligible Claimants and payments made from the QSF;

f.   Verification of information received from potential Eligible Claimants and evaluation of documentation received;

g.   Issuing payment to eligible claimants from the QSF, making necessary payroll tax withholdings, and tracking and accounting for all undeliverable payments;

h.   Periodic reporting of activities to the EEOC;

i.   Conferring with the EEOC regarding administration of the QSF;

j.   Informing Defendants of the monetary relief distributed to each eligible claimant and all other information necessary for Defendants to satisfy their payroll tax liabilities; and

k.   Any other duties that the EEOC reasonably determines are necessary to administer the QSF, including but not limited to those duties as articulated in Paragraph 26 and its subparts.

**30.03**   Determination of eligibility and claim share amount is entirely at the discretion of the EEOC.

### V.      GOALS FOR AFRICAN AMERICAN WORKERS AND WORKERS OF AMERICAN NATIONAL ORIGIN

**31**      Subject to the conditions set forth in this Section V, Defendants shall exercise good faith in seeking to achieve the goal of offering employment to and retaining the employment of African American applicants and applicants of American national origin for all farm worker, packing shed, and supervisory positions at its Georgia facilities in each year of the Decree.

**32**      While Defendants will seek to achieve greater retention of American and/or African American workers, as well as greater representation of American and/or African American in all farm worker, packing shed, and supervisory positions, these goals are acknowledged to be:

**32.01**   retaining 65% of the non-H2A workers whose production average during days 5, 6, and 7 of the training period (see Paragraph 44.03 below) is greater than 50% of the applicable minimum wage rate.

**32.02**   with respect to packing shed positions: (a) Defendants will make diligent efforts to ensure that such positions are open and available to non-H2A workers (including American and African-American) and to not refer non-H2A workers to field positions where there are packing shed positions occupied by H2A workers; (b) Defendants will ensure that the Task Force referenced will have as a continuing agenda item the issue of increasing non-H2A workers in the packing shed positions (e.g., discussing reasonable measures to adjust packing shed schedules to increase non-H2A worker retention in packing shed positions filled by H-2A workers); and (c) Defendants will produce written information available to employees describing the packing shed positions and the type of typical work schedule.

**32.03**   allocate 50% of non-administrative supervisory and/or leadership positions to American and/or African American workers for the entire season as defined by the applicable Work Agreement.

**33**   Within thirty (30) days of the Effective Date, the Company shall post field and packing shed supervisory level position openings in conspicuous places in the cafeteria, main office, and packing shed for a minimum of one week before beginning to interview candidates for the available positions.  Such announcements shall also be provided to the Department of Labor.  In addition, the Company will actively recruit and solicit U.S. workers to these positions.

**34**   Defendants shall determine in their sole discretion who is best qualified to perform any particular position, provided Defendants remain committed to the objectives set forth in this Section V.

**35**   Notwithstanding any other provision of this Section V, Defendants shall not be required to create positions for which no work exists.

## VI.    GENERAL INJUNCTION RELIEF

**36**   **National Origin and/or Race Discrimination**. Defendants and their officers, agents, management (including supervisory employees), successors, and assigns, and all those in active concert or participation with them, or any of them, are enjoined from: (a) discriminating against employees on the basis of national origin and/or race with regard to all employment practices, including hiring, job assignment, compensation, promotion, discipline, and all other terms and conditions of employment; (b) engaging in or being a party to any action, policy, or practice that is intended to or is known to them to have the effect of harassing, intimidating, and/or dissuading from employment, any applicant or employee on the basis of national origin and/or race; and/or (c) creating, facilitating, or tolerating the existence of a work environment that subjects workers

of American national origin and/or African American workers to disparate terms and conditions of employment based on their national origin and/or race.  Provisions of this Consent Decree shall not abrogate a complaining party's right or obligation to file a timely charge of discrimination under Title VII.

37      **Retaliation**. Defendants and their officers, agents, management (including supervisory employees), successors, and assigns, and all those in active concert or participation with them, or any of them, are enjoined from: engaging in, implementing, or tolerating any action, policy, or practice with the purpose of retaliating against any current or former employee of Defendants because he or she opposed any practice made unlawful under Title VII, filed a charge of discrimination challenging any such practice, testified, or participated in any manner in any investigation (including, without limitation, any internal investigation undertaken by Defendants), proceeding, hearing in connection with this cases and/or relating to any claim of discrimination under Title VII, was identified as a possible witness in this action, asserted any rights under this Decree, or sought and/or received any monetary and/or non-monetary relief in accordance with this Decree or any subsequent modification.

38      Defendants shall develop policies, procedures, practices and programs that ensure distribution and dissemination of its work rules, policies, procedures, practices and programs to all its employees, supervisors, and managers. Defendants shall develop work rules, policies, procedures, practices and programs which ensure that all employees, supervisors and managers are encouraged and know how to report any policy or practice made unlawful under Title VII.

39      Defendants shall interpret and enforce its published work rules, policies, procedures, practices and programs to all workers without regard to national origin and/or race.

40      Defendants shall comply fully with all provisions of the Consent Decree and Title VII.

Nothing in this Consent Decree, either by inclusion or exclusion, shall be construed to limit the obligations of Defendants under Title VII or the EEOC's authority to process or litigate any charge of discrimination which may be filed against Defendants in the future.

## VII.   SPECIFIC INJUNCTIVE RELIEF

**41      Compliance with Consent Decree and Title VII**

**41.01  Appointment of Compliance Official.** Consistent with the purposes of this Decree to eradicate discrimination, and to enable Defendants to be a model employer in the area of anti-discrimination and equal employment opportunity, within sixty (60) days of the entry of the Decree, Defendants shall designate a Compliance Official.  In this capacity the designee shall take action to acquire knowledge, information and resources in the areas of Title VII, national origin and race discrimination, harassment, and retaliation. Defendants shall bear all costs associated with the designation, selection, training and retention of the Compliance Official and the performance of its duties during the term of this Decree.

**41.02  Compliance   Official's   Responsibilities**.   The   Compliance   Official's responsibilities shall include:

a)      Reviewing Defendants' work orders, policies, procedures, and practices and modifying them, as necessary to ensure adherence to and consistency with Defendants' obligations under Title VII and this Consent Decree;

b)      Ensuring training for all employees, managers, and supervisors on Defendants' policies and procedures prohibiting discrimination and retaliation under Title VII;

c)      Ensuring that Defendants' work orders, policies, procedures, and practices

are interpreted and enforced to all workers without regard to national origin and/or race;

d)      Directing Defendants' response to any complaints or inquiries regarding national origin or race discrimination to ensure an adequate response and to prevent retaliation against employees who complain or inquire about discrimination or retaliation;

e)      Monitoring Defendants' policies and practices with regard to work assignments, work schedule, and compensation for potential or actual disparate treatment in distribution of work assignments, opportunities, and compensation to workers of American national origin and/or African American workers;

f)      Monitoring Defendants' disciplinary policies and practices for potential or actual disparate treatment in the distribution of discipline and/or the resolution of grievances to workers of American national origin and/or African American workers;

g)      Reviewing and/or modifying Defendants' discipline policies to hold employees and managers accountable for failing to take appropriate action and/or for engaging in other conduct prohibited under this Decree;

h)      Providing feedback on the evaluation of managers and supervisors in the area of antidiscrimination/equal employment opportunity;

i)      Being responsible for the preparation and submission of reports to the Commission, as required by this Decree;

j)      Overseeing maintenance of records required to be preserved by this

Decree; and

k)   Otherwise ensuring compliance with the terms of this Decree and Title VII.

**42**   **Task Force**.  Defendants will create a Task Force whose focus will be on retaining non-H2A workers and make reasonable efforts to implement reasonable changes proposed by the Task Force.  It is agreed that current non-H2A workers, including returning seasonal workers, would be effective in providing insight into practices that would be successful in retaining non-H2A workers.

**43**    **Management Training**.  Beginning not later than ninety (90) days after Court approval of this Decree or Commission approval of the training, whichever is later, Defendants shall provide a reasonable amount of training, whose content has been previously reviewed and approved by the Commission (which approval shall not be unreasonably withheld), to its management and supervisory personnel.  Training shall consist of at least the following:

**43.01**   Defendants' statutory obligations under Title VII in general, and in particular its obligation not to discriminate on the basis of national origin and/or race in employment decisions concerning the hiring, work assignments, distribution of work, discipline, and termination of its employees; and

**43.02**   Objective, non-discriminatory decision-making and proper procedures for scheduling work assignments and tracking performance, discipline, and/or termination; and

**43.03**   Review of the objectives contained in Section V of this Decree and discussion of efforts to achieve such goals.

**43.04**   Defendant shall document the attendance of all persons who attend such training. Within one hundred and twenty days (120) of Court approval of this decree, Defendants shall produce to the EEOC documents verifying the occurrence of the training session(s) and supply a copy of the training material.

**43.05**   During the term of this Decree, all new managers and supervisors hired or promoted after the completion of the training set forth in Paragraph 43 and its subparts, and who will participate in supervising workers, and/or participate in job assignment, disciplinary, or termination decisions, shall be trained in accordance herewith within sixty (60) days after their date of hire or promotion.  Such training is not required to be in a live format and will be subject to the Commission's approval (which approval shall not be unreasonably withheld).

**44**   **Farm Worker Hiring Procedures.**

**44.01**   **Pre-Hiring Information Session.** Within thirty (30) days of the Effective Date, and continuing thereafter throughout the term of the Decree, Defendants will conduct pre-hire informational sessions for non-H2A job applicants who are responding to active Department of Labor job postings for the Defendants or who have otherwise applied for vacant positions.  The sessions will provide non-H2A applicants with information on the duties and responsibilities of the vacant position(s), anticipated work schedules and assignments, performance expectations, and Defendants' commitment to its statutory obligations under Title VII.   These sessions shall be conducted no earlier than 8:00 a.m.

**44.02**   **Employee New Hire Orientation.** Within ninety (90) days of the Effective Date, the Defendants shall implement a new hire orientation for all non-supervisory,

non-H2A employees. This orientation will be compensable and will include a review of Defendants' EEO policies, the applicable work rules and job requirements as well a component covering Title VII. The training will include a review of the Defendants employment policies, types of prohibited employment actions, consequences of engaging in prohibited employment actions, and what employees should do if they believe they have been subjected to prohibited employment actions. Such training will last a minimum of 30 minutes and shall be either live, or provided via videotape or similar audio-visual media.

44.02.01    Each attendee shall be notified of their right to be free from discrimination, and be provided with a copy of the posting (attached as Exhibit A).

44.02.02    Defendants will document the attendance of employees who complete orientation by having them sign an acknowledgement of attendance and verifying receipt of the Defendants' work rules, equal employment opportunity policy and no harassment policy.

44.03 **Farmworker Training.** Each new farmworker shall receive a period of no less than seven (7) working days of training on proper field work, staking, planting, picking and/or packing shed procedures. During this training period, while no applicable performance standards will be assessed against the new employee, it is understood that a new farmworker may be discharged for refusing to work and/or for failing to give reasonable efforts (for example, if after completion of the fourth day of the training period, the farmworker's production for the following days was less than 35% of the applicable minimum wage rate).

**45**      **Termination Appeal.** Within ninety (90) days after the Effective Date, Defendants shall create a termination appeal process for non-H2A employees.   All costs associated with termination appeal process as described in the following Paragraph 45 and its subparts, unless otherwise explicitly stated, shall be borne exclusively by Defendants.  This Termination Appeal process shall remain in effect through the entire term of this Decree.

     **45.01**   In the event that an employee is terminated (regardless of whether the termination is involuntary or voluntary), Defendants shall provide the employee with a Georgia Department of Labor Notice of Separation and a Termination Appeal Request Form (attached as Exhibit B) at the time of his or her termination.  The Notice of Separation shall state with specificity the reason(s) for the termination decision.  If the employee is not onsite at the time of termination, and Defendants are unable to hand deliver this paperwork to the employee, the paperwork shall be mailed to the employee's last known address with the final paycheck.  The Termination Appeal Request Form shall also be made available in the front lobby of the Defendants' main office.

     **45.02**   All employees shall have the right to appeal a termination decision within 30 days of the employee's termination date by sending a Termination Appeal Request Form (attached as Exhibit B) to the attention of the Termination Appeal Officer at an address that will be provided on the Form.

     **45.03**   Defendants shall retain an independent, third-party who has no business or financial affiliation (other than compensation for serving as the Termination Appeal Officer) with Defendants to act as a "Termination Appeal Officer."  The Termination Appeal Officer shall be agreeable to the EEOC and Plaintiff-

Intervenors.  The Officer shall hold hearings at the Company's main office or the office of the Termination Appeal Officer at least once a month, and the Termination Appeal Officer shall send notice of the hearing at the address the employee provides on the Termination Appeal Request Form.  Either party has the option to have a representative of their choice present at the hearing, however, any costs associated with either party's representation shall be borne by that party. The costs associated with the termination appeal process and the Termination Appeal Officer shall be borne by Defendants.

**45.04**   The Termination Appeal Officer shall have the ability to uphold the termination or to reinstate the employee.  However, the Termination Appeal Officer will have no authority to award any other type of relief.

**45.05**   The Termination Appeal Process and the decision of the Termination Appeal Officer shall in no way affect an employee's right to file a complaint with any state or federal government agency or otherwise impede or limit any rights afforded to the employee by law.  The Appeal form shall inform workers that their substantive rights are not affected by the termination appeal process.

**46**   **Eligibility for Rehire.**

**46.01**   Within thirty (30) days of the Effective Date, Defendants shall implement a policy that non-H2A employees will be eligible for rehire during the subsequent Work Agreement period unless they:

    **a.**   Use or possess unlawful drugs on Company property or report to work under the influence of drugs or alcohol, subject to any protections provided under the American with Disabilities Act;

27

**b.**     Engage in fighting or other violent behavior;

**c.**     Engage in theft;

**d.**     Falsify any document to a supervisor or during the course of a Company investigation;

**e.**     Abuse or destroy Company property;

**f.**     Carry firearms or other weapons in violation of Company policy;

**g.**     Engage in illegal conduct at any time on the Company's premise; or

**h.**     Engage in conduct that after a reasonable investigation is determined to violate the Company's Equal Employment Opportunity or no harassment policies.

**47**     **Offers of Employment to Aggrieved Persons for 2009, 2010, 2011, 2012 Growing Seasons and Subsequent Growing Seasons.**

**47.01**  Within ninety (90) days of the Effective Date, Defendants shall make all reasonable efforts to extend rehire offers for the upcoming Work Agreement (2013) to all former non-H2A workers who were employed for any portion of the 2009, 2010, 2011, and 2012 growing seasons or who were terminated for reasons other than those stated in Paragraph 46.01.  The Commission shall provide Defendants with a spreadsheet containing the verified last known contact information for the aforementioned former employees, compiled by the settlement claims administrator in accordance with Paragraph 30 and its subparts, of this Decree.  In subsequent growing seasons, Defendants shall make all reasonable efforts to extend offers to U.S. workers who worked during any period of the preceding growing season.

28

**47.02**   If a non-H2A employee is eligible for rehire, the Company will send a notice of job vacancy to the last known address the employee provides within a reasonable time prior to the beginning of the next Work Agreement.

**48**   **Transportation for American Workers**. Effective at the beginning of the next Work Agreement period and during the Work Agreement periods for the term of the Consent Decree, except as otherwise noted below, Defendants shall provide non-compensable transportation to interested non-H2A workers to and from a pick-up point in Moultrie, GA to a rally point on Defendants' premises.  Although it is anticipated initially that the designated pick-up and drop-off point shall be at or near the Department of Labor's office in Moultrie, GA, the location of any such transportation may be changed as agreed upon in writing by the Parties.  With respect to this transportation provision, the following additional terms apply:

  **a.**   This transportation shall provide space for up to 40 workers as demand requires.

  **b.**   Any cost associated with this transportation shall be borne by Defendants.

  **c.**   If the transportation service is not shown to have helped recruitment/retention of non-H2A workers after a full Work Agreement period, and after consultation and agreement with the EEOC and GLS, the transportation may be discontinued, provided however if transportation is discontinued before the end of the season pursuant to subparagraph (d) below, Defendants will restart transportation in the next season.

  **d.**   After the first six weeks of implementation, if there are not an average of 5 or more non-H2A workers who use this transportation over the course of a rolling four-week period, the transportation may be discontinued; provided, however, the

transportation service would be tried again in the next Work Agreement period (with the same rules/conditions applying).

e.     If a non-H2A worker wants to use the transportation service, they will be required to sign a disclosure/waiver form provided by the Company and which will be available at the Department of Labor and at the Company's front lobby.

f.     The non-H2A workers may sign up for this transportation service at the pre-employment informational session or the new hire orientation session (where an announcement about the availability of this transportation service will be made). An employee may also later sign up to use the transportation service provided that the employee signs and returns the disclosure/waiver form to the receptionist or Jon Schwalls at least four days in advance of being permitted to ride.   These sign-up sheets must be retained through the term of the Decree.

g.     An employee who signs up for the transportation service but does not show up for the transportation service on three occasions over the course of a rolling four-week period will lose his/her right to the service.

h.     The departure time in the morning is anticipated to be 6:15 a.m.

i.     The departure time at the end of the workday is anticipated to be no earlier than 5:00 p.m. and no later than 7:00 p.m.

j.     The Company will be permitted to distribute a disclosure/waiver form describing the transportation service.

k.     It is agreed and understood by the Parties that participation by the non-H2A workers is voluntary; accordingly, the time associated with the transportation

service is not compensable.  It is further agreed and understood by the Parties that this service is not intended to dictate work start/stop times.

**49**     **Limited Contact of Colene Flowers and Fermin Palomares**.  Defendants shall ensure that all non-H2A workers shall have no work-related contact with Colene Flowers and Fermin Palomares and neither shall have any role in training or orienting non-H2A workers.

**50**     **Field Sanitation Units.**  Within thirty (30) days of the Effective Date, the Company will ensure that its sanitation and field water dispensing units are within a ¼ mile of where the workers are currently working in compliance with the regulations for the Migrant and Seasonal Agricultural Worker Protection Act.  The Company shall provide field sanitation units in each field, which are cleaned at least two times per week, for all workers.

**51**     **Drinking Water**.  Defendants shall provide coolers with cool drinking water and disposable cups to all workers.

**52**     **Weapons Policy**. At the beginning of the next Work Agreement, the Company will implement a policy prohibiting weapons and firearms in a manner consistent with Georgia State law.

**53**     **Notice Posting**.  For the pendency of the Consent Decree Defendants shall post a notice to employees in prominent and conspicuous places at its Georgia facilities its non-discrimination policy and the Posting attached hereto as Exhibit A, informing them of this settlement, its terms, and Defendants' commitment to compliance with federal laws relating to equal employment opportunity.

**54**     **Reporting.**

    **54.01**   On every February 15th during the term of this Decree, Defendants shall submit a report to the Commission with the following information regarding workers

assigned to the fields and packing shed at its Georgia location(s) for the applicable Work Agreement:

**54.01.01**     The number of non-H2A applicants in the applicant pool during the preceding twelve-month period. For ease of verification, Defendants shall submit the referral list as provided by the Moultrie Department of Labor for each applicable twelve-month period.

**54.01.02**     Identify each worker offered employment and/or hired during the applicable Work Agreement, including name, national origin, sex, race, date of hire, end of contract period, and if applicable, date of termination.

**54.01.03**     Identify each farm worker who worked in the packing shed during the applicable Work Agreement and provide the total of number of compensable hours performed by each.

**54.01.04**     Identify each farm worker who performed a supervisory and/or leadership role during the applicable Work Agreement, including name, national origin, sex, race, and the period for which the worker acted in the supervisory and/or leadership role**.**

**54.02**   Beginning August 15, 2013, and continuing every August 15th and February 15th during the term of this Decree, Defendants shall submit a report to the Commission and counsel for Plaintiff-Intervenors with the following information regarding the Termination Appeal Process according to Paragraph 45 and its subparts of this Decree.   This report shall include: (1) a list of employees terminated during the preceding six months, including name, date of hire, date of termination, race, national origin, and last known contact information; (2) reason

for termination; (3) whether the employee participated in the Termination Appeal Process; and; (4) the outcome of the Termination Appeal Process (e.g., reinstated, not reinstated, etc.).

**54.03**   Within thirty (30) days after completion of the Management Training according to Paragraph 43 and its subparts of this Decree, Defendants shall submit a report to the Commission containing the names and job titles of each person who received such training.

**54.04**   The reports required by this Paragraph 54 and its subparts shall be sent postage prepaid to:

Robert K. Dawkins, Regional Attorney, Atlanta District Office, Equal Employment Opportunity Commission, 100 Alabama Street, S.W., Suite 4R30, Atlanta, Georgia 30303.

**55**   **Record Keeping Requirements**.   During the term of this Decree, Defendants shall comply fully with the Commission's Recordkeeping Regulations, 29 C.F.R. §1602.14 ("Regulations").   In particular, Defendants shall retain for the term of this Decree or as required by the Regulations, whichever is longer, all documents pertaining to work assignments, termination, rates of pay or other terms of compensation, and the reports referenced in Paragraph 54 and its subparts.

## VIII.  MONITORING COMPLIANCE

**56**   During the term of this Decree the EEOC shall have the right to review compliance with this Decree at Defendants' Georgia locations.  The review shall consist of, but not be limited to, inspecting and copying (at Defendants' expense) a reasonable number of relevant, non-confidential and non-privileged documents, including all policies, payroll records, work

assignments, disciplinary and termination documents, termination appeal records, interviewing Defendants' employees, and inspecting Defendants' business premises.  Before scheduling any on-site compliance review, the Commission shall notify Defendants in writing at least seven (7) business days in advance of any on-site compliance review.   Such notice will include a description of the issue(s) the EEOC seeks to review and a description/identification of the documents it wishes to review and the witnesses it seeks to interview.  Within the seven (7) day notice period regarding any on-site investigation, Defendants shall have the right to respond to such notice.  The on-site visit will be scheduled at a mutually convenient time shall occur during normal business hours and be conducted according to Defendants' security and safety procedures.   Defendants shall be allowed to have an attorney and a Human Resources representative present during any Commission interview of an employee holding a supervisory or management position.  The Commission shall give Defendants at least seven (7) business days within which to copy documents requested pursuant to the Commission's review.  Defendants shall be required promptly to comply with all reasonable requests of the Commission for such monitoring information, including provision of personnel data previously described by this Decree in a format as agreed to by the Parties.

## IX. TERM, DISMISSAL AND RETENTION OF JURISDICTION

**57**      The "Effective Date" is the date of final Court approval of the Decree.  The term of this Decree shall end on December 31, 2016; provided however, that the reports as required in Paragraphs 54.01 and 54.02 will be issued on February 15, 2017.  During that time, this Court shall retain jurisdiction over the Parties for purposes of compliance with this Decree, including issuing such orders as may be required to effectuate its purposes.  Upon approval of this Decree,

this Court shall dismiss all claims by the Commission in this action, with prejudice, but shall retain jurisdiction to monitor compliance with this Decree during the term hereof.

**58**      The Parties agree that all disputes between them regarding provisions of this Decree, with the exception of events constituting a payment default, as described in Paragraph 25, shall first be raised informally between them, including by exchanging written notices among the Parties setting forth their positions, and that they shall attempt in good faith to meet and confer regarding such matters with the view to prompt and informal resolution.  If such matters are not resolved informally within 30 days, the Parties shall consider whether resort to mediation is in the best interests of the Parties.  If the Parties cannot agree to mediate, or if the mediation does not result in an agreement between them, then they may bring the dispute to this Court for resolution, provided that they set forth with specificity the efforts they have made to comply with the provisions of this paragraph.

**59**      The dismissal of this action in accordance with the provisions of Paragraph 57 shall bar the Commission from bringing any administrative proceeding or suit under Title VII against Defendants based in whole or in part on any acts or omissions occurring on or between January 1, 2009 and December 31, 2011 that either (1) were or could have been alleged in this lawsuit, or (2) involve class, systemic or pattern and practice allegations concerning workers of American national origin and/or African American workers identified in Paragraph 3 above at Defendants' Norman Park facility within the State of Georgia.

## X.      ENFORCEMENT

**60**       There is no private right of enforcement in connection with Defendants' obligations under the Consent Decree and only the Parties may enforce compliance herewith or otherwise have any rights hereunder.

**61**     Enforcement may be had by any Party subject to Paragraph 58 of this Consent Decree.

## XI.   COSTS AND ATTORNEYS' FEES

**62**     Each Party shall be responsible for and shall pay its own attorney's fees and costs, except

as to costs and expenses allocated by this Decree.


SO ORDERED , this 10th day of December, 2012


/s/ Hugh Lawson
The Honorable Hugh Lawson
United States Senior District Judge

IT IS AGREED:

_s/Robert Dawkins_
Robert K. Dawkins (GA Bar No. 076206)
Sairalina Corniel (GA Bar No. 940665)
U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone: 404.562.6818


_s/Sairalina Corniel_
Sairalina Corniel (GA Bar No. 940665)
U.S. Equal Employment Opportunity
Commission
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone: 404.562.6842


_s/James Cerwinski_
James L. Cerwinski (GA Bar No. 277846)
U.S. Equal Employment Opportunity
Commission
10 South Howard Street, 3rd Floor
Baltimore, MD 21201
Tel: 410.209.2220


Counsel for Plaintiff


_s/Dawson Morton (w/express permission)_
Dawson Morton (GA Bar No. 525985)
Leah Lotto (GA Bar No. 940599)
Georgia Legal Services Program
Farmworker Division
104 Marietta Street, Suite 250
Atlanta, GA 30303
Tel.: 404.463.1633


Counsel for Plaintiff/Intervenors

_s/Joseph Shelton (w/express permission)_
Joseph P. Shelton (GA Bar No. 640630)
Terri R. Stewart (GA Bar No. 244624)
Fisher & Phillips LLP
1075 Peachtree St. NE
Suite 3500
Atlanta, GA 30309
Tel: 404.231.1400


Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

EQUAL EMPLOYMENT                          :
OPPORTUNITY COMMISSION,                   :
                                          :
                     Plaintiff,           :        CIVIL ACTION NO.
and                                       :        7:11-CV-134-HL
                                          :
ZANDREA WADE, et al.                      :
                                          :
              Plaintiff-Intervenors,      :
          v.                              :
                                          :
HAMILTON GROWERS, INC, et al              :
                                          :
                     Defendants.          :
_____       :

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 7th day of December, 2012, served the foregoing **Consent Decree** using the Court's CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

Joseph P. Shelton
Terri R. Stewart
Fisher & Phillips LLP
1075 Peachtree St. NE
Suite 3500
Atlanta, GA 30309

*Counsel for Defendants*

38

Dawson Morton
Leah Lotto
Georgia Legal Services Program
Farmworker Division
104 Marietta Street, Suite 250
Atlanta, GA 30303

*Counsel for Plaintiff/Intervenors*

_s/Sairalina Corniel_
Counsel for Plaintiff