IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. 7:11-CV-134-HL |
| and | |
| ZANDREA WADE, et al. | |
| Plaintiff-Intervenors, | |
| v. | JURY TRIAL DEMANDED |
| HAMILTON GROWERS, INC.; SOUTHERN VALLEY FRUIT AND VEGETABLE, INC.; HAMILTON PRODUCE, LP.; KENDA PROPERTIES, LP.; WK HOLDINGS, LLC; WK MEX PROPERTIES, LP; and WKW, LLC. | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of national origin and/or race and to provide appropriate relief to Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Fiona Dawson, Rickey Forrest, Terrick Grant,

Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammy Myricks, Jimmy Pasley, Courtney Ranger, Ronnie Severson, Quincy Thornton, Zandrea Wade and Alicia Ware, and other aggrieved individuals ("class members") who worked for Defendants in and around Norman Park, Georgia from January 2009 to present and who were adversely affected by such practices. The Plaintiff alleges that Defendants engaged in a pattern or practice of unlawful discrimination by terminating and/or constructively discharging Americans based on national origin. The Plaintiff further alleges that Defendants intentionally and unlawfully terminated African Americans based on race and/or national origin. The Plaintiff further alleges that Defendants engaged in a pattern or practice of unlawful discrimination by placing individuals who were born in the United States and of American national origin in less desirable job assignments and providing fewer work opportunities on the basis of their national origin, resulting in such persons earning less than their non-American comparators. Plaintiff also alleges that Americans were subjected to different terms and conditions of employment based on their national origin.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6 ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Georgia, Valdosta Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) and Section 707(a) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and 2000e-6(a).

4. At all relevant times, Defendant Hamilton Growers, Inc. ("Hamilton Growers") has continuously been a corporation doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

5. At all relevant times, Defendant Southern Valley Fruit and Vegetable, Inc. ("Southern Valley") has continuously been a corporation doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

6. At all relevant times, Defendant WK Holdings, LLC ("WK Holdings") has continuously been a limited liability company doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

7. At all relevant times, Defendant Hamilton Produce, L.P. ("Hamilton Produce") has continuously been a limited partnership doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

8. At all relevant times, Defendant Kenda Properties, L.P. ("Kenda Properties") has continuously been a limited partnership doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

9. At all relevant times, Defendant WK Mex Properties, L.P. ("WK Mex") has continuously been a limited partnership doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

10. At all relevant times, Defendant WKW, LLC. ("WKW") has continuously been a limited liability company doing business in the state of Georgia that maintains a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

11. Defendants Southern Valley, WK Holdings, Hamilton Produce, Kenda Properties, WK MEX, and WKW may all be served process through their registered agent, Kent T. Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

12. At all relevant times, Defendants operate an enterprise that consists of farming operations that grow, pack, and sell fruit and vegetable produce.

13. Defendants form part of the same integrated enterprise and are interdependent on one another for their ongoing business.

14. Defendant Hamilton Growers grows and packs farm produce that is sold to Defendant Southern Valley.

15. Defendant Southern Valley purchases farm produce from Defendant Hamilton Growers and its Mexican subsidiary operations, and markets, and sells the farm produce on the wholesale market.

16. Defendant Southern Valley purchases farm produce grown by its Mexican subsidiary operations by and through Defendant WK Mex.

17. Defendant WK Mex owns Compania Agricola Valle de Sur. De R.L. ("Agricultural Company of the South"), a foreign company located in Mexico that grows farm produce that is sold exclusively to Defendant Southern Valley.

18. Defendant WK Mex owns Southern Valley de Yucatan, S. de R.L. ("Southern Valley of Yucatan"), a foreign company located in Mexico, that packs

the farm produce grown by the WK Mex's operations, and ships the produce to Defendant Southern Valley for repacking, marketing, and sale.

19. Defendant Southern Valley's inventory is replenished exclusively from domestic produce grown by Defendant Hamilton Growers and from produce grown and shipped by its Mexican subsidiary companies.

20. Defendant WKW transports Defendant Southern Valley's packaged produce to customers.

21. Defendant Kenda Properties owns the land and buildings leased to Defendants Southern Valley and Hamilton Growers necessary for their business operations.

22. Defendant Hamilton Produce owns the farm equipment and refrigerated containers leased to Defendants Southern Valley and Hamilton Growers necessary for their business operations.

23. Defendants' income and losses associated with its inter-company lease agreements are identified as non-passive business activities.

24. At all relevant times, Defendants had common management, interrelation between operations, centralized control of labor relations, and common ownership and financial control.

25. At all times relevant, there was complete interrelation of operations between all Defendants, by and through Kent T. Hamilton and Wanda Hamilton-Tyler.

26. Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same majority shareholders, Wanda Hamilton-Tyler and Kent T. Hamilton.

27. Kent T. Hamilton is the Chief Executive Officer of Defendants Hamilton Growers and Southern Valley.

28. Wanda Hamilton-Tyler is the Chief Financial Officer and Secretary of Defendants Hamilton Growers and Southern Valley.

29. Wanda Hamilton-Tyler and Kent T. Hamilton are equal 50% members of Defendant WKW, through their respective trusts, and maintain exclusive control over this Defendant's management and business affairs.

30. Wanda Hamilton-Tyler and Kent T. Hamilton are equal 50% members of Defendant WK Holdings, through their respective trusts, and maintain exclusive control over this Defendant's management and business affairs.

31. Defendant WK Holdings serves as the General Partner (with a 1% ownership interest) and manages the interests of Defendants Hamilton Produce, Kenda Properties, and WK Mex, and conducts no other business.

32. Wanda Hamilton-Tyler and Kent T. Hamilton are equal limited partners (each with a 49.5% interest) of Defendants Hamilton Produce, Kenda Properties, and WK Mex, through their respective trusts, and have exclusive control over the management of these Defendants.

33. At all relevant times, all Defendants coordinated all of their activities in furtherance of the enterprise's business and financial interests.

34. At all relevant times, all Defendants operated out of the same building and shared employees, telephone lines, office furniture, equipment, software, and utilities.

35. At all relevant times, Defendants Kenda Properties, Hamilton Produce, WK Mex, and WK Holdings, did not incur separate, independent costs for their operations, including but not limited to labor, rent, office expenses, and utilities.

36. Defendants Kenda Properties, Hamilton Produce, WK Mex, and WK Holdings have no independent employees at all.

37. At all relevant times, Defendants generated combined financial statements and acted in concert to secure financing and transact business.

38. At all relevant times, Kent T. Hamilton was the day-to-day manager of all Defendants.

39. At all relevant times, Kent T. Hamilton directed labor relations for all Defendants and had the power to hire, fire, and alter the terms and conditions of employment at each entity.

40. At all relevant times, employees of the enterprise routinely cycled from the field to plant and pick crops, to the packing shed in order to sort, pack, and ship produce.

41. At times relevant to this lawsuit, Defendants have coordinated, pooled, and collateralized the financial assets of the enterprise to obtain outside loans to fund the daily operations of the enterprise.

42. In 2010, Defendants collectively had long term debt obligations secured by the enterprise's real estate, farm equipment, warehouse equipment, and personal guarantees of Kent T. Hamilton and Wanda Hamilton-Tyler.

43. In 2011, Defendants collectively increased its long term debt obligations secured by the enterprise's real estate, farm equipment, warehouse equipment, and personal guarantees by Kent T. Hamilton and Wanda Hamilton-Tyler.

44. In 2011, Defendants coordinated, pooled, and collateralized the financial assets of the enterprise to support the issuance of bonds by the Moutlrie-Colquitt County Development Authority, to finance the acquisition of land, one or more buildings, and equipment by Defendant Kenda Properties, L.P., for use by

Defendant Southern Valley, and one or more of its affiliated entities, as a fruit and vegetable cold storage and processing facility.

45. The bonds were secured by a letter of credit issued to Defendants by a financial institution. The letter of credit is secured by the enterprise's land, buildings, equipment, and personal guarantees by Kent T. Hamilton and Wanda Hamilton-Tyler.

46. Defendants are so integrated that they constitute a "single" or "integrated" employer for purposes of Title VII.

47. At all relevant times, Defendants have continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h), and employed fifteen or more employees for each working day in each of twenty or more calendar weeks.

## STATEMENT OF CLAIMS

48. More than thirty days prior to the institution of this lawsuit, Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Fiona Dawson, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammy Myricks, Jimmy Pasley, Courtney Ranger, Ronnie Severson, Quincy Thornton, Zandrea Wade and Alicia Ware ("Charging Parties") filed charges of discrimination with the Commission alleging violations

10

of Title VII by Defendants. All conditions precedent to the institution of this lawsuit have been fulfilled.

## Termination Based on National Origin

49. Since at least January 2009, Defendants have engaged in unlawful employment practices at its Norman Park location, in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by unlawfully subjecting a class of American employees to a pattern or practice of discriminatory treatment by disproportionately terminating them based on their national origin.

50. Defendants hired approximately 114 American workers and 370 workers from Mexico ("Mexican workers") for the agricultural growing season in 2009.

51. By June 2009, nearly half of the American workers were terminated or constructively discharged, and on information and belief, the overwhelming majority of American workers were terminated or constructively discharged prior to the close of the 2009 growing season.

52. Few to none of the Mexican workers were involuntarily terminated or constructively discharged during the 2009 growing season.

53. Defendants hired approximately 233 American workers and 518 Mexican workers for the agricultural growing season in 2010.

54. Approximately 80 Americans were fired in or around May, 2010. In or around the time of their termination, Defendants made representations to these workers to the effect of "All you Americans are fired."

55. By June 2010, nearly all of the American workers were terminated or constructively discharged.

56. Few to none of the 518 Mexican workers were involuntarily terminated or constructively discharged during the 2010 growing season.

57. Defendants hired approximately 295 American workers and 494 Mexican workers for the agricultural growing season in 2011.

58. By November 2011, nearly all of the American workers were terminated or constructively discharged.

59. Few to none of the 494 Mexican workers were involuntarily terminated or constructively discharged during the 2011 growing season.

60. The termination of American workers in 2009, 2010, and 2011 was based on their national origin.

**Termination Based on Race and /or National Origin**

61. Since at least June 2009, Defendants engaged in unlawful employment practices at their Norman Park location, in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by intentionally and unlawfully terminating a group of African American (black) employees on the basis of their race.

62. On or about June 1, 2009 at least sixteen African American workers were summarily terminated, including Johnny Blackwell, Michael Blakely, Michael Collins, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Johnny Moore, Sammy Myricks, Jimmy Pasley, Quincy Thornton, Earl Davis, Jerry Davis, Timothy McNealy, Gary Sims and Michael Tuff.

63. At or about the time the decision to discharge these individuals was made, the terminating official said something to the effect of "All you black American people, f*#k you all…[J]ust go to the office and pick up your check."

64. Willie Harmon, African American, who was not working on the day of the June 1, 2009 mass firing, learned upon his return to work shortly thereafter that he, too, had been terminated. He was told by one of Defendants' supervisors that all of the African Americans had been fired.

65. When Willie Harmon asked why he was terminated, he was told "no specific reason" by the Human Resources representative.

66. Richard Jones, African American, who was not present during the termination arrived shortly thereafter and observed his African American co-workers standing in line to receive their final checks. He too was terminated and given his final check.

67. The termination of these sixteen individuals identified in Paragraph 62 was based race and/or national origin.

68. On or about May 9, 2009, Defendants terminated at least seven African American (black) workers, including Fiona Dawson, Zandrea Wade, Alicia Ware, Victoria Bigelow, Maxine Harris, Kayla McCloud and Trina Scott for the express reason that Defendants had been required to pay them over $40.00 in make-up pay.

69. Make-up pay is required when an employee performs piece-work labor, but does not gather enough pieces to earn the equivalent of minimum wage during the pay period. In that event, the Defendants were required to pay "make-up pay", the difference between the amount earned and the prevailing minimum wage.

70. Although at least fifty workers from Mexico were paid over $40.00 in make-up pay for a pay period, none of these workers were terminated.

71. The Defendants' articulated reason for terminating the African American workers identified in Paragraph 68 is pretextual because not all persons who had received more than $40.00 in make-up pay were terminated, i.e., the rule was not applied to foreign workers.

72. The African Americans identified in Paragraph 68 were terminated based on their race and/or national origin.

### Disparate Terms and Conditions of Employment

73. Since at least March 2009, Defendants engaged in unlawful employment practices at its Norman Park location, in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by intentionally and unlawfully subjecting Americans to disparate terms and conditions of employment based on their national origin and/or race (black).

74. During the 2009, 2010, and 2011 growing and harvesting seasons, Defendants gave American workers discriminatory job assignments which resulted in them earning less pay than workers from Mexico. This was done by systemically assigning American workers to pick vegetables on a piece-work basis from rows which had less desirable produce or already been picked by workers from Mexico.

75. During the 2009, 2010, and 2011 growing and harvesting seasons, Defendants engaged in a pattern and practice of giving American workers less job opportunities than workers from Mexico. Defendants accomplished this by habitually delaying work start times, sending American workers home and denying them the opportunity to work at all, or ending their workday while allowing Mexican workers to continue to work.

76. During the 2009, 2010, and 2011 growing and harvesting seasons, the Defendants engaged in a pattern or practice of assigning Mexican workers to more

15

favorable job assignments in the packing shed and/or those paid on an hourly basis while assigning American workers to field jobs paid by the piece.

77. The practices complained of in Paragraphs 74-76 resulted in American workers receiving less work hours and less pay than their counterparts from Mexico.

78. The unlawful employment practices complained of in paragraphs 49 through 77 above were done with malice or with reckless indifference to the federally protected rights of the Charging Parties and the American and African American (black) class members.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in a pattern or practice of terminating American and African American persons based on national origin and race in their Georgia facilities and work sites, and engaging in any other employment practice which discriminates on the basis of national origin or race.

B. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or

participation with them, from engaging in a pattern or practice of assigning persons to jobs based on national origin or race in their Georgia facilities and work sites.

C. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from subjecting American and African-American employees to disparate terms and conditions of employment based on national origin and/or race.

D. Order Defendants, to institute and carry out policies, practices, and programs which provide equal employment opportunities for all American and African-American employees, and which eradicate the effects of their past and present unlawful employment practices.

E. Order Defendants to make whole the Charging Parties and the class members, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices.

F. Order Defendants to make whole the Charging Parties and the class members, by providing compensation for past and future pecuniary losses resulting from the unlawful practices described in Paragraphs 49 through 77 above, including job search expenses, in amounts to be determined at trial.

G. Order Defendants to make whole the Charging Parties and the class members, by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of in Paragraphs 49 through 77 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H. Order Defendants to pay to the Charging Parties and the class members punitive damages for its malicious and/or reckless conduct described in Paragraphs 49 through 77 above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REEMS
Associate General Counsel

*s/ James L. Cerwinski*

ROBERT K. DAWKINS
Regional Attorney
Georgia Bar No. 076206

OTTRELL FERRELL EDWARDS
Supervisory Trial Attorney
Georgia Bar No. 141979

JAMES L. CERWINSKI
Trial Attorney
Georgia Bar No. 277846

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:   (404) 562-6818
Facsimile:    (404) 562-6905