IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| and | : | |
| | : | |
| ZANDREA WADE, KATHERN BENTLEY, | : | CIV. ACT. NO. 7:11-cv-134-HL |
| JOHNNY BLACKWELL, LATOYA | : | |
| BLACKWELL, MICHAEL BLAKELY, | : | |
| VONEKA BUTLER, EDDIE JAMES COLE, | : | JURY TRIAL DEMANDED |
| MICHAEL COLLINS, KIMBLE DANIELS, | : | |
| EARL DAVIS, JERRY DAVIS, KRESHONDA | : | |
| DAVIS, FIONA DAWSON, CYNTHIA DAY, | : | |
| MATTHEW DENNIS, MICHAEL EDWARDS, | : | |
| NICOLAS EDWARDS, RACHEL FLEMMING, | : | |
| RICKEY FORREST, TERRICK GRANT, WILLIE | : | |
| HARMON, MICHAEL HARRIS, MICHAEL | : | |
| HAWKINS, JARIS HENRY, JACK JACKSON, | : | |
| MISTY JACKSON, JANELLE JENKINS, | : | |
| RICHARD JONES, STEPHANIE KING, | : | |
| TERRANCE KING, JOANNA LEE, JOHNNY | : | |
| MOORE, SAMMIE LEE MYRICKS, JIMMY | : | |
| PASELY, BOBBI JEAN PROSSER, COURTNEY | : | |
| RANGER, ASHLEY RICHARDSON, RANDY | : | |
| ROBINSON, RONNIE SEVERSON, GARY | : | |
| SIMS, CONNIE SLATER, JAVARUS | : | |
| STEWART, ANGELA STUBBS, SHAGARIE | : | |
| THOMAS, QUINCY THORTON, ALICIA | : | |
| WARE, KAREEM WASHINGTON, WILLIE | : | |
| WHITE, AND DEBORAH WILLIAMS, | : | |
| | : | |
| Plaintiff/Intervenors, | : | |
| | : | |
| v. | : | |
| | : | |
| HAMILTON GROWERS, INC.; SOUTHERN | : | |
| VALLEY FRUIT & VEGETABLE, INC.; KENT | : | |
| HAMILTON; HAMILTON FARMS MEX, L.P.; | : | |
| HAMILTON PRODUCE, L.P.; KENDA | : | |
| PROPERTIES, L.P.; WK HOLDINGS, LLC; WK | : | |
| MEX PROPERTIES, L.P.; and WKW, LLC, | : | |
| | : | |
| Defendants. | | |

## SECOND AMENDED COMPLAINT IN INTERVENTION

## I. PRELIMINARY STATEMENT

1.      Plaintiff/Intervenors are residents of South Georgia who worked in the fields and packing shed of Defendants, an agricultural enterprise that imports over four hundred workers from Mexico each season. Defendants discriminated against Plaintiff/Intervenors, local American workers, by assigning the Plaintiff/Intervenors less desirable tasks, delaying their start of work and leaving them to wait uncompensated, and giving Plaintiff/Intervenors fewer hours than their Mexican coworkers. Defendants eventually fired or constructively discharged Plaintiff/Intervenors while retaining their Mexican workers. Plaintiff/Intervenors bring claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 to correct these unlawful employment practices.

2.      Defendants also violated the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") by making false or misleading statements to Plaintiff/Intervenors, by failing to keep records of all compensable hours worked, by breaching the terms of the AWPA working arrangement by firing Plaintiff/Intervenors for reasons not disclosed in their AWPA working arrangement, by failing to provide Plaintiff/Intervenors the hours of work offered, by failing to pay each Plaintiff/Intervenor for all compensable hours worked, and by requiring Plaintiff/Intervenors to work under conditions which violated field sanitation requirements.

3.      Defendants breached Plaintiff/Intervenors' employment contracts by wrongfully firing Plaintiff/Intervenors, by failing to provide the hours of work per week offered in the contract, and by failing to compensate Plaintiff/Intervenors for all compensable hours worked.

4.      Defendants also violated the Fair Labor Standards Act ("FLSA") by failing to pay Plaintiff/Intervenors the minimum wage for all compensable hours worked.

2

5.      Plaintiff/Intervenors seek their lost and unpaid wages; liquidated damages; actual, incidental, consequential, compensatory damages, and punitive damages; pre- and post-judgment interest, reasonable attorneys' fees and costs, and declaratory and injunctive relief.

## II. JURISDICTION AND VENUE

6.      This Court has jurisdiction of this action pursuant to:

      a.      28 U.S.C. § 1331 (Federal Question);

      b.      29 U.S.C. § 1337 (Interstate Commerce);

      c.      28 U.S.C. § 1343 (Civil Rights);

      e.      29 U.S.C. § 216(b) (FLSA);

      f.      29 U.S.C. § 1854(a) (AWPA); and

      g.      28 U.S.C. § 1367 (Supplemental).

7.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4, because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

9.      This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. ADMINISTRATIVE PROCEEDINGS

10.      Within one hundred and eighty (180) days of the discriminatory action taken against Plaintiff/Intervenors by Defendants, Plaintiff/Intervenors Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Fiona Dawson, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammie Lee Myricks, Jimmy Pasely, Courtney Ranger, Ronnie Severson, Quincy Thorton, Zandrea Wade, and Alicia

Ware filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

11.     Plaintiff/Intervenors Kathern Bentley, Earl Davis, Jerry Davis, Kreshonda Davis, Bobbi Jean Prosser, Randy Robinson, and Gary Sims assert claims based on the timely filing of a charge alleging class-wide discrimination with the EEOC by Plaintiff/Intervenor Zandrea Wade.

12.     The EEOC issued a letter of determination finding cause for Plaintiff/Intervenors' discrimination allegations on July 20, 2011.

13.     The parties attempted conciliation. Conciliation failed on August 11, 2011. Accordingly, Plaintiff/Intervenors have completed all necessary administrative procedures to bring this action and Plaintiff/Intervenors have fulfilled all conditions precedent to the initiation of this lawsuit.

## IV. PARTIES

14.     Plaintiff, the Equal Employment Opportunity Commission, is the agency charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964.

15.     Plaintiff/Intervenor Jaris Henry is of United States national origin (American) and African American (black) and was employed as fieldworker by Defendants in 2008.

16.     Plaintiff/Intervenors Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Earl Davis, Jerry Davis, Kreshonda Davis, Fiona Dawson, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammie Lee Myricks, Jimmy Pasely, Courtney Ranger, Randy Robinson, Gary Sims, Quincy Thorton, Zandrea Wade, and Alicia Ware are of United States national origin (American) and African American (black) and were employed as field and/or packing shed workers by Defendants in 2009.

4

17.     The consents to sue of Plaintiff/Intervenors Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Earl Davis, Jerry Davis, Fiona Dawson, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammie Lee Myricks, Jimmy Pasely, Courtney Ranger, Randy Robinson, Gary Sims, Quincy Thorton, Zandrea Wade, and Alicia Ware are attached as part of composite Exhibit A to the original complaint.

18.     Plaintiff/Intervenors Kathern Bentley and Bobbi Jean Prosser are of United States national origin (American) and Caucasian (white) and were employed by Defendants in 2009.

19.     The consent to sue of Plaintiff/Intervenor Kathern Bentley is attached as part of composite Exhibit A to the original complaint.

20.     Plaintiff/Intervenors Eddie Cole, Matthew Dennis, Michael Edwards, Rachel Flemming, Michael Harris, Michael Hawkins, Jack Jackson, Janelle Jenkins, Stephanie King, Ronnie Severson, and Willie White are of United States national origin (American) and African American (black) and were employed as field and/or packing shed workers by Defendants in 2010.

21.     Plaintiff/Intervenor Angela Stubbs is of United States national origin (American) and Caucasian (white) and was employed by Defendants in 2010.

22.     The consents to sue of Plaintiff/Intervenors Michael Edwards, Janelle Jenkins, Stephanie King, and Willie White are attached as part of composite Exhibit A to the original complaint. The consents to sue of Rachel Flemming, Robbie Severson, and Michael Hawkins were filed as Docs. 31 and 33. The consents to sue of Eddie Cole, Matthew Dennis, Jack Jackson, and Angela Stubbs are attached as Ex. G to this complaint.

23.     Plaintiff/Intervenors Voneka Butler, Nicolas Edwards, Misty Jackson, Terrance King, Ashley Richardson, Connie Slater, Javarus Stewart, Shagarie Thomas, Kareem

Washington, and Deborah Williams are of United States national origin (American) and African American (black) and were employed as field and/or packing shed workers by Defendants in 2011.

24.     Plaintiff/Intervenor Cynthia Day is of United States national origin (American) and Caucasian (white) and was employed by Defendants in 2011.

25.     At all time relevant to this action, Plaintiff/Intervenors were seasonal agricultural workers within the meaning of the AWPA because their work was of a seasonal nature and they were not required to be absent overnight from their permanent residences. 29 U.S.C. § 1802(10); 29 C.F.R. § 500.20(r).

26.      At all times relevant to this action, Defendants Hamilton Growers, Inc. ("Hamilton Growers"), Southern Valley Fruit & Vegetable, Inc. ("Southern Valley"), WK Holdings, LLC ("WK Holdings"), Hamilton Farms Mex, L.P. ("Hamilton Farms Mex"), Hamilton Produce, L.P. ("Hamilton Produce"), Kenda Properties, L.P. ("Kenda Properties"), WK Mex Properties, L.P. ("WK Mex"), and WKW, LLC ("WKW"), collectively the "Corporate Defendants" were and are Georgia corporations, limited partnerships, or limited liability companies that maintain a principal place of business at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

27.     Defendant Hamilton Growers may be served with process through its registered agent, Wanda Hamilton-Tyler, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

28.     Defendant Southern Valley may be served with process through its registered agent, Kent Hamilton, at 4160 Cool Springs Road, Norman Park, Georgia 31771.

29.     Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, WK Holdings, WK Mex, and WKW, LLC may be served with process through their registered agent, Kent Hamilton, at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771.

30.     The four Limited Partnership Defendants, Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex ("Limited Partnership Defendants"), are comprised of General Partner Defendant WK Holdings, and Limited Partners Wanda Hamilton-Tyler and Defendant Kent Hamilton through their respective trusts.

31.     The two Limited Liability Corporation Defendants, WK Holdings and WKW, ("Limited Liability Defendants") are owned by Wanda Hamilton-Tyler Trust and Defendant Kent Hamilton Trust.

32.     Defendant Hamilton Growers, the Limited Partnership Defendants, and Defendant WKW solely provides services for Defendant Southern Valley.

33.     Defendant WK Holdings, LLC serves as the General Partner of the Limited Partnership Defendants. WK Holdings has no revenue and conducts no business.

34.     In its capacity as General Partner, Defendant WK Holdings, operated and controlled by Wanda Hamilton-Tyler and Defendant Kent Hamilton, has full and complete power to conduct the business of Defendants Hamilton Farms Mex, Hamilton Produce, Kenda Properties, and WK Mex Properties and is responsible for management, employment, and bookkeeping.

35.     Defendants Hamilton Growers and Southern Valley share the same corporate officers and the same shareholders, Wanda Hamilton-Tyler and Kent Hamilton, and operate out of the same building.

36.     The Limited Partnership Defendants and the Limited Liability Defendants operate out of the same building as Defendants Hamilton Growers and Southern Valley.

37.     Defendant Hamilton Farms Mex leases farming equipment to Defendant Southern Valley for the cultivation of produce.

38.     Defendant Hamilton Produce leases farm equipment and refrigerated containers to Defendants Hamilton Growers and Southern Valley for the cultivation and storage of produce.

39.     Defendant Hamilton Produce does not invoice Defendants Hamilton Growers or Southern Valley for the leased equipment and containers and is merely paid as obligations arrive or come due. Defendant Hamilton Produce solely provides equipment and containers to Defendants Hamilton Growers and Southern Valley.

40.     Defendant Kenda Properties leases all of its property to Defendants Southern Valley and Hamilton Growers to use for cultivating produce. The lease agreements were executed by Kent Hamilton and Wanda Hamilton-Tyler on behalf of both the lessors and the lessees.

41.     The vast majority of Defendant Kenda Properties' income is from land rent.

42.     Defendant Kenda Properties only rents property to Defendants Southern Valley and Hamilton Growers.

43.     Defendant WK Mex sells future produce paid for in advance to Defendant Southern Valley exclusively.

44.     The management of Southern Valley directs WK Mex to operate in synch and seamlessly with Southern Valley.

45.     Defendant WKW provides transportation services to Defendant Southern Valley.

46.     Upon information and belief, Defendant WKW derives substantially all of its income from transportation services provided to Defendant Southern Valley.

47.     The transportation services provided by WKW form an integral part of the business of Defendant Southern Valley.

48.     The bookkeeping for Defendant Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants is performed by employees of Defendant Southern Valley.

49.     Any work performed for the Limited Partnership Defendants and the Limited Liability Defendants is performed by employees provided by Defendants Southern Valley or Hamilton Growers, and managed by Defendant Kent Hamilton.

50.     Defendant WK Holdings controls the property of the Limited Partnership Defendants and Defendant WKW and is authorized to sign loans on their behalf.

51.     Defendant WK Holdings and the Limited Partnership Defendants pledged all of their assets for a loan to Defendant Southern Valley. Defendant WK Holdings and the Limited Partnership Defendants have represented that the loan to Southern Valley would provide them with substantial economic benefits.

52.     The Corporate Defendants form part of the same integrated enterprise and are dependent on one another for their ongoing business as Defendants Hamilton Growers and WK Mex  supply the crops that Defendant Southern Valley markets and ships, Defendants Kenda Properties, Hamilton Farms Mex, and Hamilton Produce rent land and equipment to Defendants Hamilton Growers and Southern Valley, WKW provides transportation services to Defendant Southern Valley, and Defendant Southern Valley in turn supplies the funds for wages and expenses of Defendants Hamilton Growers, WKW, and the Limited Partnership Defendants. Defendant WK Holdings serves as a general partner for the Limited Partners in this scheme.

53.     Defendant Southern Valley owns the corporate headquarters where Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are also based.

54.     Defendants Hamilton Growers and Southern Valley compensate the corporate officers of the Limited Partnership Defendants and the Limited Liability Defendants.

55.     Employees of Defendant Southern Valley maintain the corporate registrations and paperwork for Defendants Hamilton Produce, Kenda Properties, WKW, WK Holdings, Hamilton Farms Mex, and WK Mex.

56.     The Corporate Defendants act together to obtain financing and transact business.

57.     The Corporate Defendants report their business results on consolidated financial statements, reporting the business results all together and do not prepare individual financial statements for reporting outside the companies.

58.     Defendants Hamilton Growers and WK Holdings effectively have no assets and Defendants Hamilton Growers, the Limited Partnership Defendants, and the Limited Liability Defendants are dependent for their continued existence on Defendants Kent Hamilton and Southern Valley.

59.     Defendants Hamilton Growers and WK Mex coordinate all of their activities with Defendant Southern Valley, and Defendant Southern Valley directs when they are to harvest crops, which fields are to be harvested, and how much is to be harvested.

60.     The Corporate Defendants rely on each other to grow, pack and sell fruit and vegetable commodities.

61.     The Corporate Defendants share common control and ownership, the same geographic location, and are interdependent on one another for their activities.

62.     Defendant Kent Hamilton is the Chief Executive Officer of Defendants Hamilton Growers and Southern Valley and is a member-manager of the remaining Defendants and may be served with process at 2775 Ellenton-Norman Park Road, Norman Park, Georgia 31771-5036.

63.     Defendant Kent Hamilton is the day-to-day manager of all the Corporate Defendants.

64.     Defendant Kent Hamilton exercises management, ownership, and financial control over all of the Corporate Defendants.

65.     Defendant Kent Hamilton directs labor relations at the Corporate Defendants and has the power to hire, fire, and alter the terms and conditions of employment at all of the entities.

66.     Plaintiff/Intervenors were dependent for their wages as a matter of economic reality on Defendant Kent Hamilton and the Corporate Defendants.

67.     At all times relevant to this action, Defendants have continuously been agricultural employers within the meaning of the Agricultural Worker Protection Act because they owned or operated a farm and recruited, employed, or transported agricultural workers. 29 U.S.C. § 1802(2).

68.     Defendants are employers pursuant to the H-2A regulations because they had employment relationships with U.S. and H-2A workers.

69.     At all times relevant to this action, the Corporate Defendants were employers as defined by Title VII as they engaged in an industry affecting commerce and employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 2008, 2009, 2010 and 2011. 42 U.S.C. § 2000e(b).

70.     At all times relevant to this action, Defendants Kent Hamilton and the Corporate Defendants were engaged in the harvesting and production of vegetables in Georgia for sale in interstate commerce and as such were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

71.     The Corporate Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of 42 U.S.C. §§ 2000e(b), (g), and (h).

## V. THE H-2A PROGRAM AND PLAINTIFF/INTERVENORS' EMPLOYMENT CONTRACTS

72.     An agricultural employer in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1). These provisions, along with the implementing regulations, are commonly referred to as the "H-2A program."

73.     Employers requesting H-2A workers must file a temporary labor certification application with the U.S. Department of Labor Regional Administrator (under 2008 regulations) or U.S. DOL's Employment and Training Administration. 20 C.F.R. §§ 655.101(a)(1) and (b)(1) (2008 and 2009); 20 C.F.R. § 655.130 (2010). The application has to include a job offer, known as a "job order," that complies with the requirements of 20 C.F.R. §§ 655.102 (2008); 20 C.F.R.§ 655.104 (2009); 20 C.F.R. § 655.122 (2010); and 20 C.F.R.§ 653.501 (2008 and 2009). The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. *See* 20 C.F.R. § 655.101(b) (2008); 20 C.F.R. § 655.102(e)(2) (2009); 20 C.F.R. § 655.121(a)(2) (2010).

74.     A job order must contain all material terms and conditions of employment and is reviewed by the state and federal DOL to ensure the terms offered are no less than the prevailing terms in the industry. 20 C.F.R. § 653.501(d)(3) and (4) (2008).

75.     Where an agricultural employer seeks foreign workers under the H-2A program, the terms of the job order establish the minimum terms and conditions for employment for all agricultural workers similarly employed.

12

76.     An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 102(a) (2008); 20 C.F.R. § 655.104(a) (2009); 20 C.F.R. § 655.122(a) (2010).

77.     As part of its application for foreign workers, the employer must certify to the U.S. DOL, under penalty of perjury, that the job positions are and have been open to U.S. workers. 20 C.F.R. § 655.103(c) (2008); 20 C.F.R. § 655.105(a) (2009); 20 C.F.R. § 655.135(a) (2010).

78.     At all times relevant to this action, Plaintiff/Intervenors were U.S. workers as defined by 20 C.F.R. § 655.100(b) (2008); 20 C.F.R. § 655.100(c) (2009) and 20 C.F.R. § 655.103(b) (2010).

79.     Defendants as participants in the H-2A program were required to prefer Plaintiff/Intervenors over foreign workers.

80.     Defendants provided Plaintiff/Intervenors a written handbook at the start of each season. The handbook primarily consisted of a copy of the job order.

81.     The handbook incorporated by reference the Field Sanitation Standards found at 29 C.F.R. § 1928.110.

82.     In the absence of separate written disclosures, the terms and conditions set forth by the job order and employee handbook constitute an AWPA working arrangement governing the employment of similarly employed agricultural workers.

83.     The written terms and conditions of the job orders here constituted written employment contracts between Plaintiff/Intervenors and other workers so employed, and Defendants.

84.     The H-2A employment contracts at issue here incorporate a regulatory definition of employer found at 20 C.F.R. § 655.100(b) (2008), 20 C.F.R. § 655.100(c) (2009) and 20 C.F.R. § 655.103(b) (2010).

85.     In 2008, 2009, 2010, and 2011, Defendant Hamilton Growers submitted a job order to the U.S. DOL.

86.     The 2008, 2009, 2010, and 2011 job orders' "Employer's Certification" sections were signed by Defendant Kent Hamilton. Exs. B to the original complaint and E at ETA 790 § 21; Exs. C and D to the original complaint at ETA 790 § 26.

87.     The second job order submitted in 2008 lists Defendant Kent Hamilton in the "Employer's Certification" box and Defendant Kent Hamilton signed just above that box. Ex. F at ETA 790 § 21.

88.     At all times relevant to this action, AgWorks, Inc. assisted Defendants in the H-2A application process.

89.     For each H-2A contract, Defendants promised that each worker would earn at least the prevailing rate for the crop activity or at least the Adverse Effect Wage Rate (known as the "AEWR"), whichever is higher, for all hours worked in the payroll period.

90.     The 2008 and 2009 employment contracts promised to pay the applicable AEWR or any higher AEWR the date it was published. Exs. E and F at Attachment to ETA 790, Item 1(I); Ex. B to the original complaint at Attachment to ETA 790 Continuation, Item 11.

91.     An AEWR of $8.53 was published on February 26, 2008. 73 Fed. Reg. 10288-90 (Feb. 26, 2008).

92.     An AEWR of $8.77 was published on May 29, 2009. 74 Fed. Reg. 26016-17 (May 29, 2009).

93.    The 2010 AEWR of $9.11 was published on February 18, 2010. 75 Fed. Reg. 7293-94 (Feb. 18, 2010).

94.    The 2011 AEWR of $9.12 was published on March 1, 2011. 76 Fed. Reg. 11286-87 (Mar. 1, 2011).

95.    The 2008, 2009, 2010, and 2011 job orders offered forty (40) hours of work per week. Exs. E and F at ETA 790 at Item 8; Ex. B to the original complaint at ETA 790 at Item 6; Exs. C and D to the original complaint at ETA 790 at Item 11.

96.    The 2008, 2009, 2010, and 2011 job orders contained a term that workers had to "keep up with fellow workers" but did not specify any minimum standard for production or limits on build-up or make-up pay. *See* Exs. E and F at "Work Rules" No. 19, Exs. B and C to the original complaint at "Work Rules" No. 18; Ex. D to the original complaint at ETA 790 at Item 15.

## VI. STATEMENT OF FACTS

97.    In each year relevant to this Complaint, Defendants imported more than 400 Hispanic workers of Mexican national origin under H-2A job orders for planting and harvesting vegetables.

98.    Colene Flowers is employed by Defendants as the Human Resources Director ("H.R. Dir.") and was in charge of Plaintiff/Intervenors' hiring and orientation, performed Plaintiff/Intervenors' pay calculations, and distributed paychecks to Plaintiff/Intervenors.

99.    H.R. Dir. Flowers frequently expressed to the white and black Plaintiff/Intervenors that she preferred workers of another race or national origin, Hispanics of Mexican national origin.

100.    H.R. Dir. Flowers expressed the need to protect herself from black workers and displayed mace on her desk when distributing paychecks to the black Plaintiff/Intervenors.

15

101.   Field Supervisor Fermin Palomares is employed by Defendants.

102.   Supervisor Palomares oversaw the male Plaintiff/Intervenors in their field work.

103.   Supervisor Palomares frequently expressed the opinion that black American workers were lazy when supervising the Plaintiff/Intervenors.

104.   For the 2008 season, Defendant Hamilton Growers certified to the U.S. DOL that they were experiencing a shortage of American workers. Defendant Hamilton Growers, acting on behalf of all Defendants, filed job order number GA 7652488 requesting 197 H-2A workers for the period of March 1, 2008 to December 31, 2008. A copy of the first 2008 job order is attached as Exhibit E. Defendant Hamilton Growers then filed job order number GA 7659157 requesting 292 workers for the period of April 1, 2008 to December 31, 2008. A copy of the second 2008 job order is attached as Exhibit F.

105.   Plaintiff/Intervenor Jaris Henry was qualified for and employed under the terms of the 2008 job orders.

106.   Plaintiff/Intervenor Jaris Henry was constructively discharged in late March or April of 2008.

107.   Upon information and belief, few to none of the Mexican H-2A workers were constructively discharged in 2008.

108.   For the 2009 season, Defendant Hamilton Growers certified to the U.S. DOL that they were experiencing a shortage of American workers. Defendant Hamilton Growers,  acting on behalf of all Defendants, filed job order number GA 7749306 requesting 479 H-2A workers for the period of March 25, 2009 to December 31, 2009. A copy of the 2009 job order is attached to the original complaint as Exhibit B.

109.   Plaintiff/Intervenors Kathern Bentley, Johnny Blackwell, Latoya Blackwell, Michael Blakely, Michael Collins, Kimble Daniels, Earl Davis, Jerry Davis, Kreshonda Davis,

Fiona Dawson, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Joanna Lee, Johnny Moore, Sammie Lee Myricks, Jimmy Pasely, Bobbi Jean Prosser, Courtney Ranger, Randy Robinson, Gary Sims, Quincy Thorton, Zandrea Wade, and Alicia Ware were qualified for and employed under the terms of the 2009 job order.

110.    In 2009, Defendants provided the Mexican H-2A workers with electronic time cards to record work hours but used a separate system to record U.S. workers' time and did not offer electronic time cards for Plaintiff/Intervenors or other non-Hispanic U.S. workers.

111.    On May 9, 2009, Defendants terminated Plaintiff/Intervenors Fiona Dawson and Zandrea Wade. The reason stated for the termination was that Defendants had been required to pay them more than $40.00 in make-up pay.

112.    The decision to terminate workers with more than $40.00 in make-up pay was made directly by Defendant Kent Hamilton.

113.    Make-up pay is a term used by Defendants for the amount of a worker's pay that is the difference between the worker's lawful minimum wage earnings and the pay calculated through Defendants' system of paying field workers on a piece-rate basis.

114.    A requirement of not having more than $40.00 in makeup pay was not previously disclosed to Plaintiff/Intervenors, was not contained in their written employment contracts, and was not disclosed to the U.S. DOL.

115.    Mexican workers who also received over $40.00 in make-up pay were not terminated.

116.    The Defendants used piece rate work assignments and a piece rate production standard to subject American workers, including those identified in Paragraph 109, to work requirements not imposed on their Mexican peers.

117.    The Defendants gave preferential work assignments to Mexican H-2A female workers by assigning them to packing shed work while assigning black and American female workers to fieldwork paid at a piece-rate.

118.    The Defendants's articulated reason for terminating the Plaintiff/Intervenors identified in Paragraph 111 is pretextual because the rule was not applied to Mexican H-2A workers.

119.    On June 1, 2009, Defendants terminated Plaintiff/Intervenors Johnny Blackwell, Michael Blakely, Michael Collins, Earl Davis, Jerry Davis, Rickey Forrest, Terrick Grant, Willie Harmon, Richard Jones, Johnny Moore, Sammy Myricks, Jimmy Pasely, and Quincy Thornton.

120.    During the termination described in Paragraph 119, Mr. Palomares referred to Plaintiff/Intervenors by their race and national origin.

121.    By June of 2009, all of the Plaintiff/Intervener identified in Paragraph 109 had been terminated or constructively discharged.

122.    Upon information and belief, few to none of the Mexican H-2A workers were terminated during the 2009 season.

123.    For the 2010 season, Defendant Hamilton Growers again certified to the U.S. DOL that it was experiencing a shortage of more than 400 American workers.

124.    Defendant Hamilton Growers,  acting on behalf of all Defendants, filed job order number GA 7826097 requesting 460 H-2A workers for the period of March 16, 2010 to December 31, 2010. A copy of the 2010 job order is attached to the original complaint as Exhibit C.

125.    Plaintiff/Intervenors Eddie Cole, Matthew Dennis, Michael Edwards, Rachel Flemming, Michael Harris, Michael Hawkins, Jack Jackson, Janelle Jenkins, Stephanie King,

18

Ronnie Severson, Angela Stubbs, and Willie White were qualified for and employed under the terms of the 2010 job order.

126.    By the end of July, 2010, all of the Plaintiff/Intervenors identified in Paragraph 125 had been terminated or constructively discharged.

127.    Upon information and belief, few to none of the Mexican H-2A workers were terminated in the 2010 season.

128.    For the 2011 season, Defendant Hamilton Growers again certified to the U.S. DOL that it was experiencing a shortage of American workers.

129.    Defendant Hamilton Growers filed job order number GA 7913958 requesting 494 H-2A workers for the period March 8, 2011 to December 31, 2011. A copy of the 2011 job order is attached to the original complaint as Exhibit D.

130.    Plaintiff/Intervenors Voneka Butler, Cynthia Day, Nicolas Edwards, Misty Jackson, Terrance King, Ashley Richardson, Connie Slater, Javarus Stewart, Shagarie Thomas, Kareem Washington, and Deborah Williams were qualified for and employed under the terms of the 2011 job order.

131.    By June 2011, all of the Plaintiff/Intervenors identified in Paragraph 130 had been terminated or constructively discharged.

132.    Upon information and belief, few to none of the Mexican H-2A workers were terminated in the 2011 season.

133.    During the 2008, 2009, 2010, and 2011 seasons, Defendants discriminated against Plaintiff/Intervenors by assigning them to less desirable tasks, resulting in less earnings than workers of non-U.S. national origin. The Defendants systematically assigned Plaintiff/Intervenors to pick vegetables on less desirable rows or rows that had already been picked by H-2A workers.

19

134.    In 2009 and 2010 Defendants assigned the black American male Plaintiff/Intervenors to the task of staking tall posts. The task required lifting a large t-shaped mallet over the worker's head to hammer the post into the ground and risked injury to the worker.

135.    On information and belief, the task of staking posts was assigned primarily to black male workers during the 2009 and 2010 seasons.

136.    In 2009, Defendants did not provide safety helmets to Plaintiff/Intervenors performing this task.

137.    During the 2008, 2009, 2010, and 2011 seasons, Defendants systematically gave fewer hours to Plaintiff/Intervenors than to Mexican H-2A workers and preferentially assigned work first to the Mexican H-2A workers.

138.    The Defendants frequently delayed the Plaintiff/Intervenors' morning start times by not assigning work tasks to the Plaintiff/Intervenors until after the Mexican workers had begun work, although Plaintiff/Intervenors were available to start work when the Mexican workers started.

139.    On some work days, after assigning work to the Mexican workers, and leaving Plaintiff/Intervenors to wait uncompensated, Defendants' supervisor would inform Plaintiff/Intervenors that there was "no work for domestics."

140.    H.R. Dir. Flowers refused to reduce work hours of Mexican workers to provide work for the Plaintiff/Intervenors.

141.    On some work days, Defendants sent the Plaintiff/Intervenors home early while Mexican H-2A workers were still working, further reducing Plaintiff/Intervenors' work hours.

142.    In the 2010 and 2011 seasons, Defendants required Plaintiff/Intervenors to take a drug test as a condition of employment.

143.   Upon information and belief, Defendants did not require Mexican H-2A workers to take drug tests as a condition of employment.

144.   In the 2011 season, Defendants required Plaintiff/Intervenors to attend a group interview at the Moultrie DOL prior to being hired, and rejected those who sought to be hired without attending the meeting, but did not require Mexican workers to attend such a meeting at the Moultrie DOL.

145.   The practices detailed in Paragraphs 133 and 137-142 resulted in Plaintiff/Intervenors receiving fewer work hours and less pay than their Mexican H-2A coworkers.

146.   In order to receive work, Defendants required Plaintiff/Intervenors to appear for assignment at the bus loading zone at Defendants' labor camp.

147.   Defendants did not record or pay Plaintiff/Intervenors the required wage for all compensable time, including time spent waiting for work to be assigned.

148.   Plaintiff/Intervenors were engaged to wait by Defendants' system of preferentially assigning work to foreign workers first.

149.   The labor camp is located in a remote area and Plaintiff/Intervenors were not free to engage in personal activities, nor able to leave the waiting area, while waiting for Defendants to direct them to a bus.

150.   On some work days, Defendants did not offer any hours of work to Plaintiff/Intervenors who arrived to work, but did offer hours to Mexican H-2A workers on those days.

151.   Defendants were on notice of their FLSA obligations due to correspondence they received from their agent, AgWorks, Inc, and due to prior litigation filed against Defendants.

152.    Defendants knew of or showed reckless disregard for their FLSA obligations by not recording all compensable hours worked and by not paying Plaintiff/Intervenors at least an average of the applicable minimum wage for all compensable hours worked.

153.    Defendants did not provide the hours of work per week offered in the contract.

154.    Defendants failed to abide by their legal obligation to prefer U.S. workers.

155.    Defendants terminated Plaintiff/Intervenors for unlawful and undisclosed reasons.

156.    Defendants made false and misleading statements about the terms and conditions of employment, by representing that the position was open and available to U.S. workers, and by including assurances that they would positively recruit U.S. workers.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (CORPORATE DEFENDANTS)

157.    Plaintiffs incorporate each of the allegations contained in Paragraphs 1 through 156 above by reference.

158.    Plaintiff/Intervenors identified in Paragraphs 10 and 11, members of a protected class, assert this claim against the Corporate Defendants for race discrimination in violation of Title VII of the Civil Rights Act, as amended.

159.    The Corporate Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by terminating or constructively discharging Plaintiff/Intervenors based on their race and by intentionally and unlawfully subjecting Plaintiff/Intervenors to disparate terms and conditions of employment based on their race, and set forth in Paragraphs 99 through 153.

22

160.    The effect of the conduct complained of in Paragraphs 99 through 153 has been to deprive the Plaintiff/Intervenors of equal employment opportunities and otherwise adversely affect their status as employees. This unlawful conduct resulted in economic detriment to the Plaintiff/Intervenors.

161.    The Corporate Defendants' unlawful employment practices complained of in Paragraphs 99 through 153 were intentional.

162.    The unlawful employment practices complained of in Paragraphs 99 through 153 were done with malice or with reckless indifference to the federally protected rights of the Plaintiff/Intervenors.

## COUNT II

**NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE
CIVIL RIGHTS ACT OF 1964
(CORPORATE DEFENDANTS)**

163.    Plaintiff/Intervenors incorporate each of the allegations contained in Paragraphs 1 through 129 above by reference.

164.    Plaintiff/Intervenors identified in Paragraphs 10 and 11, members of a protected class, against the Corporate Defendants for race discrimination in violation of Title VII of the Civil Rights Act, as amended.

165.    The Corporate Defendants have engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by terminating or constructively discharging Plaintiff/Intervenors based on their national origin and by intentionally and unlawfully subjecting Plaintiff/Intervenors to disparate terms and conditions of employment based on their national origin as set forth in Paragraphs 99 through 153

166.    The effect of the conduct complained of in Paragraphs 99 through 153 has been to deprive the Plaintiff/Intervenors of equal employment opportunities and otherwise adversely

affect their status as employees. This unlawful conduct resulted in economic detriment to the Plaintiff/Intervenors.

167.    The unlawful employment practices complained of in Paragraphs 99 through 153 were intentional.

168.    The unlawful employment practices complained of in Paragraphs 99 through 153 above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff/Intervenors.

## COUNT III

### DISCRIMINATION IN CONTRACT
### (ALL DEFENDANTS)

169.    Plaintiff/Intervenors incorporate each of the allegations contained in Paragraphs 1 through156 above by reference.

170.    Plaintiff/Intervenors, members of a protected class, assert this claim pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, against all Defendants.

171.    Defendants intentionally discriminated against Plaintiff/Intervenors in their employment contracts by imposing discriminatory working conditions and denying them the benefits, privileges, terms and conditions of the contractual relationship, by seeking to enforce employment standards against Plaintiff/Intervenors not enforced against the foreign Hispanic workers, and by ultimately discharging or constructively discharging Plaintiff/Intervenors based upon their race and alienage in favor of the foreign Hispanic workers as set forth in Paragraphs 99 through 153

172.    Defendants' actions violated the Plaintiff/Intervenors' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

173.     Plaintiff/Intervenors' rights under 42 U.S.C. § 1981 to make and enforce contracts were clearly established at the time Defendants discriminated against Plaintiff/Intervenors.

174.     Defendants' conduct intentionally and impermissibly favored Hispanic aliens over Plaintiff/Intervenors in the making and enforcement of employment contracts in violation of 42 U.S.C. § 1981.

175.     As a direct result of Defendants' actions, Plaintiff/Intervenors have been subjected to discriminatory terms and conditions of employment, fired or constructively discharged, and have suffered substantial damages.

176.     Defendants exhibited oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the Plaintiff/Intervenors' civil rights so as to entitle the Plaintiff/Intervenors to an award of punitive damages to punish Defendants for their conduct and to deter Defendants and others like them from such conduct in the future.

177.     Plaintiffs seek all appropriate relief, including back pay, declaratory and injunctive relief, attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

## COUNT IV

### VIOLATIONS OF THE AGRICULTURAL WORKER PROTECTION ACT
### (ALL DEFENDANTS)

178.     Plaintiff/Intervenors incorporate each of the allegations contained in Paragraphs 1 through 156 above by reference.

179.     This Count sets forth claims for money damages, declaratory relief, and injunctive relief by Plaintiff/Intervenors against all Defendants for their violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA").

180.    The handbook and job order described in Paragraphs 83 through 96 above constituted a working arrangement between the Defendants and the Plaintiff/Intervenors within the meaning of the AWPA, 29 U.S.C. § 1822(c) and its regulations, 29 C.F.R. § 500.72.

181.    As set forth in Paragraphs 153 through 156, the Defendants violated the AWPA by:

a.      providing false and misleading information to Plaintiff/Intervenors in violation of 29 U.S.C. § 1831(e);

b.      failing to keep records of all compensable hours worked in violation of 29 U.S.C. § 1831(c);

c.      failing to pay the Plaintiff/Intervenors the AEWR wage rate for all compensable hours worked in violation of 29 U.S.C. § 1832(a); and

d.      violated the AWPA working arrangement, 29 U.S.C. §1832(c), by:

i.      terminating Plaintiff/Intervenors for unlawful and undisclosed reasons;

ii.     violating field sanitation standards at 29 C.F.R. § 1928.110(c), including by failing to maintain toilets in a clean and sanitary condition and not providing toilets within a quarter mile of where workers were working in the fields; and

iii.    failing to provide the hours of work per week offered by the contract.

182.    The violations of the AWPA working arrangement were without justification.

183.    The violations of the AWPA and its attendant regulations set forth in this Count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA.

184.     As a result of Defendants' violations of the AWPA and its attendant regulations as set forth in this Count, Plaintiff/Intervenors have suffered damages in an amount to be determined at trial.

## COUNT V

### BREACH OF CONTRACT
### (ALL DEFENDANTS)

185.     Plaintiff/Intervenors incorporate Paragraphs 1 through 156 by reference.

186.     This Count sets for a claim by Plaintiff/Intervenors against all Defendants for damages for Defendants' wrongful termination of the Plaintiff/Intervenors and breach of the "rate of pay" and hours provisions of the Plaintiff/Intervenors' H-2A employment contracts, as described in Paragraphs 58-64 and 156, above.

187.     Defendants offered employment on the terms and conditions set out in the 2008, 2009, 2010, and 2011 job orders as described in Paragraphs 75-96 and 104, 108, 124, and 130, above. Exs. B, C, and D to the original complaint; Exs. E and F to the first amended complaint.

188.     Plaintiff/Intervenors accepted Defendants' offer.

189.     Defendants breached Plaintiff/Intervenors' employment contracts by wrongfully terminating them, failing to pay the Plaintiff/Intervenors the applicable AEWR for all compensable hours worked, and failing to provide the hours of work per week offered by the contract as described in Paragraphs 110 through 156 above.

190.     As a direct consequence of Defendants' breach, Plaintiff/Intervenors suffered economic injury.

191.     Defendants are liable to Plaintiff/Intervenors for the damages that arose naturally and according to the usual course of things from Defendants' breach as provided by federal common law and/or O.C.G.A. § 13-6-2, including unpaid wages and pre-judgment interest.

## COUNT VI

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## (ALL DEFENDANTS)

192.    Plaintiff/Intervenors incorporate each of the allegations contained in Paragraphs 1 through 156 above by reference.

193.    Plaintiff/Intervenors who worked in 2009 and 2010, identified in Paragraphs 16, 18, and 20, except for Plaintiff/Intervenors Kreshonda Davis and Bobbi Jean Prosser, assert this claim against all Defendants.

194.    As detailed in Paragraphs 133 through 141 above, Defendants failed to pay Plaintiff/Intervenors an average of the applicable minimum hourly wage for all compensable hours worked in a workweek, as required by 29 U.S.C. § 206(a).

195.    As a result of Defendants' violations of the FLSA, each Plaintiff/Intervenor is entitled to recover the amount of his or her unpaid minimum wages and an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b), as well as the reasonable attorneys' fees and litigation expenses of their counsel of record pursuant to 29 U.S.C. § 216(b).

196.    Defendants' violations set out in this Count were willful within the meaning of FLSA.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff/Intervenors respectfully request that this Court grant them the following relief:

(a)    Under Counts I and II:

1.    Grant judgment against Defendants and in favor of each Plaintiff/Intervenor in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

2.      Appropriate injunctive and declaratory relief, including a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in national origin discrimination, race discrimination or retaliation and any other employment practice which discriminates on the basis of national origin or race;

3.      Punitive damages in an amount to be determined at trial;

4.      Court costs, including discretionary costs;

5.      An award of reasonable attorneys' fees;

(b)     Under Count III:

1.      Grant judgment against all Defendants and in favor of each Plaintiff/Intervenor in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

2.      Appropriate injunctive and declaratory relief, including a permanent injunction enjoining all Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in national origin discrimination, race discrimination or retaliation and any other employment practice which discriminates on the basis of national origin or race;

3.      Punitive damages in an amount to be determined at trial;

4.      Court costs, including discretionary costs;

5.      An award of reasonable attorneys' fees;

(c)     Under Count IV:

1.      Declare that all Defendants have intentionally violated the AWPA as specified above;

2.      Award Plaintiff/Intervenors the greater of his or her actual damages or statutory

damages of $500 per violation for each violation of the AWPA;

3.      Enjoin all Defendants from further violations of the AWPA.

(d)     Under Count V:

1.      Declare that all Defendants have breached their employment contracts with

Plaintiff/Intervenors as specified in Paragraph 189 above;

2.      Grant judgment against Defendants and in favor of each Plaintiff/Intervenor, in

the amount of Plaintiff/Intervenors' damages as arose naturally and according to

the usual course of things from such breach and such as the parties contemplated,

when the contract was made, as the probable result of such breach;

(e)     Under Count VI:

1.      Declare that all Defendants have willfully violated the FLSA;

2.      Grant judgment against all Defendants and in favor of each Plaintiff/Intervenor in

the amount of his respective unpaid wages as proved at trial, plus an equal amount

in liquidated damages, pursuant to 29 U.S.C. § 216(b);

3.      Award Plaintiff/Intervenors their attorneys' fees pursuant to 29 U.S.C. § 216(b).

(f)     Award Plaintiff/Intervenors pre- and post-judgment interest as allowed by law;

(g)     Cast all costs upon Defendants; and

(h)     Award Plaintiff/Intervenors such further relief, at law or in equity, as this Court deems

just and proper.


                          Respectfully submitted this 29th day of October, 2012,


                                    /s Leah Lotto
                                  Leah Lotto
                                  Georgia Bar No. 940599
                                  Dawson Morton

Georgia Bar No. 525985
Lisa Krisher
Georgia Bar No. 429762
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

*Attorneys for Plaintiff/Intervenors*